**Robert W. RAYBUCK, Plaintiff–Appellant,**

v.

**USX, INCORPORATED, a/k/a U.S. Steel Corporation, Defendant–Appellee.**

**No. 90–1805.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1991.

Decided April 10, 1992.

Phillips P. O'Shaughnessy, Sandbower, Gabler & O'Shaughnessy, P.A., Baltimore, Md., argued (John E. Sandbower, III, Robert W. Guth, Baltimore, Md., on brief), for plaintiff-appellant.

Dawne Sepanski Hickton, USX Corp., Pittsburgh, Pa., argued (Michael J. Schwarz, Schwarz, Greenblatt & Rafferty, Baltimore, Md., on brief), for defendant-appellee.

Before RUSSELL and NIEMEYER, Circuit Judges, and McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.

OPINION

DONALD RUSSELL, Circuit Judge:

This is a suit wherein the plaintiff (Raybuck), a retired management employee of the defendant (USX), sought to recover damages for breach of a series of stock options issued to him from 1978 to 1983 under a Management Employees Incentive Plan (Plan). The plaintiff appended to his breach of contract count a whole range of claims premised on theories of implied contract, breach of fiduciary duty, intentional interference with property, fraud, constructive fraud and negligent misrepresentations. The Plan granted the Compensation Committee of the USX Board of Directors authority to cancel any outstanding options "in the best interests of the Corporation." That Committee had a policy of canceling the outstanding options of any retired management employee who went to work for a direct competitor of the defendant. The plaintiff, shortly after retirement, had accepted employment in a management capacity with an important direct competitor of the defendant. The Compensation Committee canceled the plaintiff's outstanding options in accordance with its standard policy. The plaintiff, however, responded to notice of cancellation by demanding redemption of his options. When his demand was refused, the plaintiff filed this suit. After some discovery, both parties filed motions for summary judgment. The plaintiff sought summary judgment only of his breach of contract claim; the defendant's motion covered all the plaintiff's claims. After hearing, the district court found that the defendant, acting through its Compensation Committee, had canceled the plaintiff's options under a reasonable, valid provision of the option which vested in the Committee the authority to cancel the options in the best interests of the defendant. It accordingly granted the defendant's motion for a summary judgment on all counts. It dismissed the plaintiff's motion for a partial judgment in its favor. The plaintiff has appealed the granting of summary judgment in favor of the defendant. We affirm.

## I.

The defendant established in 1976 a Management Incentive Plan under which designated key management employees would be granted options to purchase USX stock under terms stated in the Plan. The purpose of the Plan's program, as set forth in the Corporation's Prospectus issued at the time, was "(1) to promote the long-term financial interest and growth of the Corporation and its subsidiaries by attracting and retaining key management personnel with the training, experience and ability to enable them to make a substantial contribution to success of the Corporation, (2) to motivate key management personnel by means of growth-related incentives to achieve long-range growth goals, and (3) to further the identity of interests of participants with those of the stockholders of the Corporation through opportunities for increased stock ownership in the Corporation."

The administration of the Plan was vested in a Compensation Committee, to be appointed by the Board of Directors, with at least three directors as members. In exercising its authority to administer the Plan, the Compensation Committee was "authorized [subject to the Board] to interpret the Plan, to prescribe, amend and rescind rules and regulations relating to it, and to make all other determinations necessary for its administration." More specifically, it was to recommend to the Board of Directors those key management employees to whom the Committee could extend offers to participate in the Plan and, if an offer was accepted, to determine the number of shares to be allotted to the participant. The Compensation Committee was also to prepare a prototype option with such conditions and restrictions as might be "deemed advisable for the protection of the Corporation." The option would not become valid until it had been accepted by the optionee. The validation procedure required submission of the proposed option contract to the optionee, and if the optionee accepted on the terms stated in the option, he was to signify acceptance thereof by signing at an indicated place at the bottom of the option contract. Finally, the Plan provided that a retired employee with outstanding options would have the right to retain his options and to exercise them subject to the terms and conditions of the option, but only within such time as might be provided in the option "not to exceed three years after retirement." However, the Compensation Committee at the time established a policy of canceling any outstanding options of a retired employee who accepted, during the three-year grace period, employment by a direct competitor of the defendant.

The plaintiff retired on August 31, 1986. The reason assigned by him for his retirement was a desire on his part to quit before he "burnt out altogether." About a month after he retired, however, he began working as a consultant for Bethlehem Steel, the defendant's largest direct competitor, and on January 1, he assumed the position of general manager of one of Bethlehem's largest facilities, the Sparrows Point plant in Maryland. When certain officers of the defendant learned of this fact, they notified the Compensation Committee, the Chairman of which promptly recommended cancellation of the plaintiff's outstanding stock options. The full Compensation Committee acted favorably on the recommendation and ordered the options canceled as of January 27, 1987. The plaintiff was duly notified of the cancellation. He thereafter submitted his options for payment. The Compensation Committee denied payment, asserting it had properly canceled the options. This action by the plaintiff followed.

After joinder of issue and some discovery, both parties moved for summary judgment. The plaintiff sought summary judgment only on his breach of contract claim; the defendant's motions went to all counts of the complaint. The district court found, in connection with the count charging breach of the option contract, that the cancellation by the Compensation Committee of the plaintiff's options was validly authorized as a reasonable ground therefor, and found in connection with the other counts of the complaint that the plaintiff had offered no evidence to support relief. It accordingly granted the defendant's mo-

tion on all counts in the complaint and dismissed the plaintiff's motion. The plaintiff has now appealed.

## II.

■ At the outset, we address the plaintiff's conflict of law claim. He contends that this case involves the internal affairs of the defendant corporation and is controlled by the law of the place of defendant's incorporation, which in this case is Delaware. He has cited a number of cases, one or two from the Delaware courts, to support his argument. *Beard v. Elster,* 39 Del.Ch. 153, 160 A.2d 731 (1960), is the primary case cited by him in this connection. In that case stockholders brought suit challenging the corporation's authority to issue stock options to its employees without receiving any consideration for such grant of corporate assets. The court held that "there must be a reasonable relationship between the value of the benefits passing to the corporation and the value of the options granted," *id.,* 160 A.2d at 737, but it cautioned that, if the purpose of the options is to insure "the corporation the benefit of the continuation of the services of the optionees" and if the option is terminable with the discontinuance of an optionee's employment, it was valid. *Id.* at 738; *see, also, Ellis v. Emhart Mfg. Co.,* 150 Conn. 501, 191 A.2d 546, 550 (1963) ("The provisions in plan B restricting the optionee from exercising any more than 20 percent of the option in any twelve-month period while service is being rendered and terminating his rights on termination of active employment reasonably ensure that the contemplated consideration will pass to the corporation. The existence of a proper consideration is all that is necessary, and the requirement is satisfied in the case before us.")

We do not understand that the plaintiff in this case questions the power of the defendant corporation to promulgate the Plan under which his options were issued. The issue here is whether the options as properly issued included a provision allowing the Compensation Committee to cancel outstanding options "in the best interests

of the Corporation." In short, unlike the cases cited by the plaintiff, all of which involved stockholders' actions challenging the power of the corporation under the law of the state where the corporation was chartered to grant options to the corporation's employees, this is a simple contract suit between the corporation and a participant of an ESPA plan. As required by conflict of law rules, the lower court is to construe the option contract in accordance with the law of the place of contract. "[I]n Maryland law, 'the *locus contractus* is the place where the last act is performed which makes an agreement a binding contract.'" *Stout v. Home Life Ins. Co.,* 651 F.Supp. 28, 32 (D.C.Md.1986), *aff'd,* 818 F.2d 29 (4th Cir.1987) (quoting *Grain Dealers Mut. Ins. Co. v. Van Buskirk,* 241 Md. 58, 215 A.2d 467, 471 (1965)). Applying that rule, the district court found Pennsylvania to be the state whose law controls in this case. The court reached this conclusion because Pennsylvania was the state where the principal offices of the defendant were located, where the directors normally met, where the Plan had been affirmed and is administered, and where the options were issued.

We now turn to the merits of plaintiff's challenge to the district court's decision on the merits. There is no real dispute between the parties as to the facts, or as to the legal issues posed by these facts.

## III.

■ The plaintiff's first contention is that he had an absolute vested right to exercise his option at any time within three years after his retirement, and that any term or condition in the option at odds with this right was void as in conflict with the express terms of the Plan. He predicated this argument on Section 11 of the Plan which states, "If a participant retires prior to termination of his option without having fully exercised his option, he shall have the right to exercise or surrender the option during its term within such period as may be provided in the option, not to exceed three years after retirement."

We think the plaintiff reads too much into Section 11. This Section may not be

read in isolation. Rather, it must be construed in connection with the purposes of the Plan and with the Plan's other sections. Section 11, of course, is preceded by Section 10, which provides that in the case of an employee who ceases to be an employee "for any cause other than death or retirement," his options are automatically terminated. Section 11 explains the retirement exception to the rule of automatic cancellation on the cessation of the optionee's employment. Under this exception, a retired employee retains a conditional right to surrender and be paid under his option. Section 11 further explains that the grace period granted to retired employees within which they have the right to surrender their options shall not "exceed three years after retirement, irrespective of what period may be stated in the option." In short, Section 11 does only one thing: It grants the retired optionee the right to surrender his option for payment but only for a period of three years after retirement. In no other fashion does Section 11 purport to change the optionee's rights or the limitations upon the exercise of the retired optionee's options. Every other "condition or restriction" stated in the option remains in force. Specifically, the right of the Compensation Committee to cancel the outstanding options of a retired employee "in the best interests of the Corporation" is in no way voided or modified, either directly or indirectly, by Section 11.

Moreover, Section 4 of the Plan clearly authorized the cancellation right at issue for inclusion in the option. Section 4 declares:

> The options shall contain such conditions and restrictions as to the purchase and delivery of shares, and such provisions as to the rights of the Corporation in the event of a breach of the agreement to continue as an employee, as may be deemed advisable for the protection of the Corporation.

Every option which the plaintiff received from the defendant contained a provision granting the Compensation Committee that right to cancel at any time such option "in the best interests of the Corporation." [1] There is no basis for plaintiff's claim that the Compensation Committee lacked the authority under the Plan to include the right to cancel. No amendment or revision of the plan was required for the Compensation Committee to have authority for the inclusion of the cancellation provision in the option as a condition on the rights of the optionee. Section 15, which places some limitations on the employer's right to amend the Plan, therefore is not relevant in resolving the validity of the cancellation herein.

The plaintiff's other reason for contending that provisions in the outstanding options providing for cancellation "in the best interests of the Corporation" are invalid is that such condition was "never approved by the Board of Directors." He bases this argument on the corporate law of Delaware, which, he says, makes such provision illegal absent formal action by the corporate Board of Directors. The Compensation Committee, plaintiff's argument proceeds, therefore, had no right to cancel the plaintiff's options and the defendant breached the option contracts when it refused to redeem plaintiff's options.

The first response to this argument is that, for the reasons already stated, Delaware law is not controlling on the issue in this case. As previously noted, Section 4 expressly provided for the inclusion in the options of "such conditions and restrictions as to the right to the purchase and delivery of shares ... as may be deemed advisable for the protection of the Corporation." Moreover, the Board of Directors of the corporation expressly approved the language of the options prepared by the Compensation Committee. At a meeting on May 30, 1978, the Compensation Committee adopted a motion stating that "the option agreement hereinafter issued pursuant to United States Steel Corporation's 1976 Stock Option Incentive Plan shall be as set

---

1. Whether the exercise of this power is subject to the court, objection for arbitrariness is an issue not before the court, since it is conceded that the ground for the cancellation in this case has a clear rational basis.

forth in the form of option agreement annexed to the minutes of the meeting." This language was approved at the Directors' Meeting on January 23, 1979, and by the stockholders at a meeting on May 7, 1979. Whether or not Directors' approval was required, the record is clear that the Directors in fact approved the option form USX used. Beyond this, every option the plaintiff received and accepted included the cancellation clause. Plaintiff accepted those options from 1978 to 1985 with full knowledge of their conditions and provisions.[2] It is now too late for him to claim he was not bound by a condition clearly stated in his options and duly accepted by him in writing. As the district court commented in the conclusion of its opinion:

> Here, the clarity of the cancellation clause in the stock option negates any credible assertion by Raybuck that he was unaware that his options were subject to cancellation in what USX deemed to be its best interests, and when he became employed by Bethlehem before exercising his options, he was acting at his own risk.

There was, therefore, clear evidence of the validity of the Committee's cancellation authority as set forth in the options, and clear evidence that the plaintiff, by formal acceptance of the option with its grant of such authority, voluntarily agreed to be bound by the option's terms.

### IV.

The plaintiff did, as we have noted, add counts for breach of an implied contract, breach of a fiduciary duty of good faith and fair dealing, intentional interference with property, fraud and negligent misrepresentation. The district court dismissed all these counts, finding,

> Raybuck has produced absolutely no evidence that he had any implied contract right *dehors* the stock options themselves or that USX engaged in any tortious conduct against him. His rights are only those conferred upon him by the

stock options, and for the reasons which I have stated those options were properly canceled prior to their exercise.

We agree completely with the district judge's findings and conclusions on this point.

The district court's grant of summary judgment in favor of the defendant on all grounds and dismissal of the plaintiff's motion for summary judgment are accordingly

AFFIRMED.

---

**2.** The plaintiff was asked to read the option before he accepted it. He testified that he did read it at the time.