MEMORANDUM
 

 ROBERT F. KELLY, District Judge.
 

 Plaintiff William McIntyre. (“Mr.McIntyre”) brings this action against his former employer, Philadelphia Suburban Corporation (“PSC”), alleging breach of contract, anticipatory breach of contract, breach of covenant of good faith and fair dealing and violation of the Pennsylvania Wage Payment and Collection Law (the “WPCL”), 43 P.S. § 260.1
 
 et seq.
 
 These claims allegedly arise from PSC’s wrongful denial of Mr. McIntyre’s claimed post-retirement right to exercise stock options pursuant to a Stock Option Plan instituted by PSC during his employment. Presently before this Court are PSC’s Motion for Summary
 
 *597
 
 Judgment and Mr. McIntyre’s Motion for Partial Summary Judgment on his claims for breach of contract and anticipatory breach. For the reasons which follow, Mr. McIntyre’s Motion is denied and PSC’s Motion is granted.
 

 I. BACKGROUND.
 

 Mr. McIntyre was employed by PSC from January of 1952 until his retirement in April of 1997. At the time of his retirement, Mr. McIntyre was Vice President in charge of Maintenance and Construction at PSC.
 

 Beginning in 1982, PSC instituted various stock incentive plans for key management employees. From 1983 until his retirement, Mr. McIntyre received stock option grants under two of these plans, the 1988 Stock Option Plan (“the 1988 Plan”) and the 1994 Equity Compensation Plan (“the 1994 Plan”). PSC made the grant under the 1988 Plan in 1993, and made grants under the 1994 Plan in 1994-1996. Pursuant to these Plans, Mr. McIntyre was to receive options in installments which would become exercisable at various times on an annual basis between 1993 and 1999.
 

 On January 5, 1998, Mr. McIntyre exercised stock options which vested in 1994, 1995 and 1996. Mr. McIntyre retired on April 1, 1997. Prior to his retirement, he admits that he was aware that the Company did not intend for him to exercise any options after he retired where those options were not exercisable as of his retirement date
 
 [1]
 
 x, specifically the options that, under the 1994 Plan, would not become exercisable until May of 1997 and March of 1998 and 1999. PL’s Dep. at 54. Nonetheless, Mr. McIntyre seeks to exercise these outstanding options. However, PSC denies that Mr. McIntyre has a right to exercise those options and refuses to honor them.
 

 Both the 1988 and 1994 Stock Option Plans are administered by a Compensation Committee of the Board of Directors of PSC (“the Committee”). The Committee comprises three or more members of the Board of Directors who are not eligible, and for at least one year prior to the their appointment were not eligible, to receive grants under the Plans or any other plan of the corporation entitling them to acquire stock, stock options or stock appreciation rights of the corporation or its affiliates. The Plans provide that
 

 [sjubject to the provisions of the plan, the Committee shall be authorized to interpret the plan and the grants made under the Plan, to establish, amend and rescind any rules and regulations relating to the Plan, to determine the terms and provisions of the agreements related to the grants described in Section 6 hereof, and to make all other determinations necessary or advisable for the administration of the Plan. The Committee may correct any defect, supply any omission and reconcile any inconsistency in the Plan or in any option or grant in the manner and to the extent it shall be deemed desirable to carry into effect. The determinations of the Committee in the administration of the Plan, as described herein, shall be final and conclusive. The Committee may adopt such rules and regulations as it deems necessary for governing its affairs.
 

 Philadelphia Suburban Corporation 1988 Stock Option Plan at p. 1; Philadelphia Suburban Corporation 1994 Equity Compensation Plan at p. 1.
 

 On December 1, 1997, the Committee considered Mr. McIntyre’s claim to the
 
 *598
 
 disputed options. The Committee unanimously agreed that any options which were not exercisable at the date of retirement could not be exercised. Consequently, Mr. McIntyre filed his Complaint in this Court on October 7, 1998, seeking money damages and a judgment declaring his rights to exercise the options which would become exercisable in March of 1999,
 

 II. STANDARD OF REVIEW.
 

 “Summary judgment is appropriate when, after considering the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact remains in dispute and ‘the moving party is entitled to judgment as a matter of law.’ ”
 
 Hines v. Consolidated Rail Corp.,
 
 926 F.2d 262, 267 (3d Cir.1991) (citations omitted). “The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating the absence of any genuine issues of material fact.
 
 Big Apple BMW, Inc. v. BMW of North America, Inc.,
 
 974 F.2d 1358, 1362 (3d Cir.1992),
 
 cert. denied,
 
 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Once the moving party has produced evidence in support of summary judgment, the nonmovant must go beyond the allegations set forth in its pleadings and counter with evidence that demonstrates there is a genuine issue of fact for trial.
 
 Id.
 
 at 1362-63. Summary judgment must be granted “against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 

 III. DISCUSSION.
 

 A. Breach of Contract and Anticipatory Breach Claims.
 

 The breach of contract and anticipatory breach claims arise out of the parties’ disagreement over certain provisions contained in PSC’s stock option grants. PSC argues that in accordance with the spirit and purpose of the stock option plans as incentives for employees aimed at increasing employee retention, options which do not become vested during employment with PSC are forfeited and cannot be exercised after retirement. In support of this contention, PSC relies upon the following provision, contained in all of the relevant grants, which states that the purpose of the Plans is to
 

 provide an incentive, in the form of a proprietary interest in Philadelphia Suburban Corporation ... to officers and other key employees ... who are in a position to contribute materially to the successful operations of the business of the Corporation, to increase their interest in the Corporation’s welfare, and to provide a means through which the Corporation can attract and retain employees of outstanding abilities.
 

 Philadelphia Suburban Corporation 1988 Stock Option Plan at p. 1; Philadelphia Suburban Corporation 1994 Equity Compensation Plan at p. 1.
 

 Mr. McIntyre, on the other hand, asserts that he is entitled to exercise the stock options which became exercisable on and after March 2, 1998, notwithstanding the fact that he retired from PSC on April 1, 1997. In support of this claim, he relies upon the following paragraph, contained in all of the relevant grants, which provides, in pertinent part, that
 

 [u]pon termination of a grantee’s employment as a result of retirement ... the period -during which the options may be exercised shall not exceed ... two years from the date of such termination in the case of ... retirement....
 

 
 *599
 
 Philadelphia Suburban Corporation 1988 Stock Option Plan at p. 3; Philadelphia Suburban Corporation 1994 Equity Compensation Plan at p. 3. Mr. McIntyre argues that pursuant to this language, he had two years after his retirement to exercise the remaining options under the plans, regardless of whether the options had vested before his retirement, since the above provision does not explicitly require that options be “vested” during employment in order to be exercised after retirement. Mr. McIntyre asserts that summary judgment in favor of PSC is inappropriate because either the objective construction of the documents clearly favors Mr. McIntyre’s interpretation, or the documents are ambiguous and their objective, reasonable meaning must be determined by a factfinder.
 

 However, as PSC points out, the Plans, the terms of which Mr. McIntyre agreed to, explicitly provide that the Committee has final and conclusive authority over administration of the stock option plans. Specifically, the Plans unequivocally state that the Committee is authorized to interpret the Plan, establish and amend any rules and regulations relating to the Plan, to determine the terms and provisions of agreements related to grants made under the plan, and to “make all other determinations necessary or advisable for the administration of the Plan.” Moreover, the Plans specifically state that determinations of the Committee in the administration of the Plan are final and conclusive. Philadelphia Suburban Corporation 1988 Stock Option Plan at p. 1; Philadelphia Suburban Corporation 1994 Equity Compensation Plan at p. 1. PSC urges this Court to recognize the Committee’s authority under the Plans.
 
 [2]
 

 The authority of committees comprised of corporate Board members, such as PSC’s Compensation Committee, should be afforded significant deference when administering stock option plans. Although there is a dearth of case law standing for this precise proposition, the existing authority clearly directs its application. In
 
 Raybuck v. USX, Inc.,
 
 961 F.2d 484 (4th Cir.1992), the plaintiff, a retired employee of the defendant, sued for,
 
 inter alia,
 
 breach of a series of stock options. The Plan under which the options were issued endowed a Compensation Committee with the authority to cancel any outstanding options “in the best interests of the Corporation.”
 
 Raybuck,
 
 961 F.2d at 484. It was the Committee’s policy to cancel outstanding stock options of any retired employee who later worked for a direct competitor of the defendant corporation.
 
 Id.
 
 Accordingly, when the retired plaintiff went to work for a direct competitor, the Committee canceled the plaintiff’s stock options.
 
 Id.
 
 The United States Court of Appeals for the Fourth Circuit, applying Pennsylvania contract law, affirmed the district court’s grant of summary judgment in favor of the defendant on all counts, holding that
 

 every option which the plaintiff received from the defendant contained a provision granting the Compensation Committee [the] right to cancel at any time such option ‘in the best interests of the Corporation’.... There is no basis for plaintiffs claim that the Compensation Committee lacked the authority under the Plan to include the right to cancel.... No amendment or revision of the plan was required for the Compensation Committee to have authority for the inclusion of the cancellation provision in the option as a condition on the rights of the optionee.
 

 Id.
 
 at 488.
 
 [3]
 
 The court further noted that as the plaintiff “accepted those options ...
 
 *600
 
 with full knowledge of their conditions and provisions,” he was precluded from claiming he was not bound by a condition clearly stated in the option and accepted by him in writing.
 
 Id.
 

 Similarly, in
 
 Weir v. Anaconda Co.,
 
 773 F.2d 1073 (10th Cir.1985), the plaintiff-employee sued his former employer for denying his request for benefits under the defendant-employer’s stock option plan and savings fund plan.
 
 Weir,
 
 773 F.2d at 1075-1076. The United States Court of Appeals for the Tenth Circuit, citing authority, adopted the standard that “judicial review of a decision properly within the discretion of the plan committee is limited to a determination of whether the committee has been arbitrary or has acted in bad faith or in a fraudulent manner.”
 
 Id.
 
 at 1078. Accordingly, as no such showing had been made to the district court, the court upheld the district court’s decision to deny de novo review of the Committee’s decision.
 
 Id.
 
 at 1080.
 

 In the instant case, guided by the logic of
 
 Raybuck
 
 -and
 
 Weir,
 
 we conclude that the determination of whether to allow Mr. McIntyre to exercise options after his retirement that had not vested during his employment was within the sole authority of the Committee. Moreover, the issue of whether the Plan language is ambiguous is a matter within the discretion of the Committee. Each grant that Mr. McIntyre received contained a provision explaining that the Committee is authorized to interpret the Plan, alter its rules, determine its terms, and make all determinations necessary and advisable for the administration of the Plan. Moreover, the Committee was authorized to correct any defect, supply any omissions and rectify any inconsistency in the Plan or in any option grant. Finally, each grant provided that the determinations of the Committee regarding any of the above matters would be final and conclusive. Accordingly, we find that the determination of whether the Plan allows for post-retirement exercise of benefits that did not vest during employment fits squarely within those powers explicitly reserved by the Committee. Further, we cannot conclude, and Mr. McIntyre had failed to persuade us to conclude, that the Committee’s determination was arbitrary, made in bad faith, or fraudulent, thereby justifying our review of its decision.
 

 Moreover, Mr. McIntyre did not refuse the option grants because he objected to the Committee’s final authority over the Plan. Rather, he accepted and exercised stock options granted to him under the Plan since 1983, and continued in PSC’s employ until his retirement in April of 1997. Further, Mr. McIntyre retired in April of 1997 notwithstanding the fact that he was aware that the PSC did not intend to honor his 1998 stock options if he retired at that time. Despite this conduct, Mr. McIntyre asks this Court to assist him in enforcing selected provisions of the Plan,' under which he claims he is entitled to the stock options, while exempting him from another provision of the Plan, which precludes his claim of entitlement. However, we decline to engage in such legal selectivity. As such, PSC is entitled to summary judgment on all breach of contract counts and the anticipatory breach of contract count.
 
 [4]
 

 
 *601
 
 B. Breach
 
 of
 
 Covenant of Good Faith and Fair Dealing.
 

 Count VII of the Complaint contains a claim for breach of the covenant of good faith and fair dealing, in which Mr. McIntyre alleges that he “expected the defendant to deal with him fairly and in good faith after a lifetime to them of devoted service.” Compl. at 17. Mr. McIntyre further asserts that he “detrimentally relied on the representations made to him in the documents as a provision for his retirement.”
 
 Id.
 
 Finally, Mr. McIntyre avers that “the actions the Defendant has taken with respect to the benefits due are arbitrary, vexatious, and capricious.”
 
 Id.
 
 at 18.
 

 Mr. McIntyre was aware of the provision in the Plans granting the Committee broad discretion over virtually every aspect of the Plans. Mr. McIntyre accepted and continued to accept benefits under the Plans from 1983 until 1997. Nonetheless, Mr. McIntyre now appears to be arguing that the Committee acted in bad faith by refusing to allow him to exercise nonnest-ed options after his retirement.
 

 Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement.... Good faith has been defined as honesty in fact in the conduct or transaction incurred ... The breach of the obligation to act in good faith cannot be precisely defined in all circumstances, however, examples of bad faith conduct include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party’s performance.
 

 Kaplan v. Cablevision of PA, Inc.,
 
 448 Pa.Super. 306, 671 A.2d 716, 722 (1996)(quoting
 
 Somers v. Somers,
 
 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992))(internal quotations omitted).
 

 In support of his bad faith claim, Mr. McIntyre complains generally that the Committee’s decision was unfair due to his “lifetime to [PSC] of devoted service.” Compl. at 17. However, the only ostensible substantive evidence of bad faith on the part of the Committee that he has offered is that the Committee accelerated a single installment of options for a fellow employee, Henry Coleman. Mr. Coleman was scheduled to and did retire in April of 1996. A 1994 installment of options was to become exercisable in March of 1996, but the grant of those options was delayed until May of 1996 awaiting shareholder approval of the new stock option plan. Accordingly, the Committee granted Mr. Coleman’s request that he be allowed to exercise the March, 1996 installment when it became exercisable in May of 1996, despite the fact that he retired in April of 1996.
 

 This is the only evidence supporting Mr. McIntyre’s claim that the Committee treated him in an arbitrary, vexatious, or capricious way, and this evidence is not persuasive. First, the benefit conferred on Mr. Coleman is very different from the benefit Mr. McIntyre seeks. Mr. Coleman was employed up until and beyond the
 
 *602
 
 date his 1994 options should have become exercisable; it was only the delay awaiting shareholder approval of the new plan which caused the grant of those options to be postponed until May of 1996. Further, Mr. McIntyre does not dispute that he was also granted a benefit substantially similar to that granted to Mr. Coleman, when the Committee agreed to keep Mr. McIntyre on the payroll until April 1, 1997, even though his last day of work was February I, 1997, in order to allow him to exercise four installments of options that became exercisable in March of 1997.
 
 See
 
 Def.’s Reply Mem. Law Supp. Def.’s Mot. Summ. J. and Resp. Opp’n Pl.’s Mot. Partial Summ. J. at 8-9 (“Def.’s Reply Brief’).
 

 Moreover, Mr. McIntyre knew before he retired that the Committee did not intend for him to exercise any options which would vest post-retirement. Pl.’s Dep. at 54-56. He also knew that the Committee would have broad discretion to administer the stock option plan when he agreed to accept its benefits, since he admits he read “everything that he ever received from PSC, including all of the stock option grants.” PL’s Mem. Law. Contra Def.’s Mot. Summ. J. and PL’s Mem. Law. Partial. Summ. J. at 5 (“PL’s Brief’). Furthermore, notably, the Complaint contains no mention of Henry Coleman, or of any other employee, in the good faith and fair dealing count or otherwise. As such, Mr. McIntyre has failed to provide sufficient evidence to show that the Committee’s decision to deny him the options was arbitrary, capricious, or vexatious.
 

 Further, Mr. McIntyre’s averment of detrimental reliance as part of this claim is misplaced. Detrimental reliance, also called promissory estoppel, is applied to enforce a promise which is not supported by consideration, in other words, where there is no binding contract.
 
 Bethlehem Steel Corp. v. Litton Indus., Inc.,
 
 507 Pa. 88, 488 A.2d 581, 593 (1985). “A cause of action under detrimental reliance or promissory estoppel arises when a party relies to his detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be.”
 
 Rinehimer v. Luzerne County Community College,
 
 372 Pa.Super. 480, 539 A.2d 1298, 1306 (1988) (citing
 
 Straup v. Times Herald,
 
 283 Pa.Super. 58, 423 A.2d 713, 720 (1980)). However, Mr. McIntyre does not assert that no contract existed due to lack of consideration, as is evidenced by his four counts of breach of contract and one count of anticipatory breach of contract in the Complaint. Rather, he disputes his entitlement under the existing contract. As such, detrimental reliance is inapplicable to his claims.
 

 C. Violation of the Wage Payment and Collection Law.
 

 With regard to Mr. McIntyre’s claim in Count VIII of violation of the WPCL, PSC summarily asserts that the WPCL claim is “only coextensive with [Mr. McIntyre’s] contract claims, and because his contract claims fail as a matter of law, so does his WPCL claim.” Def.’s Mem. Law. Supp. Mot. Summ J. at 7 (“Def.’s Brief’). In response, the only support for his 'WPCL claim that Mr. McIntyre offers is his assertion that stock appreciation rights and stock repurchase payments are wages under the WPCL. PL’s Brief at 17.
 

 We agree that because Mr. McIntyre’s contract claims fail as a matter of law, so does his WPCL claim. Even assuming that the stock options constitute wages under the WPCL, “[t]he WPCL does not create a statutory right to wages.... Rather, it provides a statutory remedy when the employer breaches a contractual right to earned wages.”
 
 Doe v. Kohn Nast & Graf, P.C.,
 
 862 F.Supp. 1310, 1325 (E.D.Pa.1994). Further, the terms of the contract determine whether specific wages are due.
 
 Id.
 

 In
 
 Doe,
 
 the plaintiff, who had been ter-. minated by his employer, brought a
 
 *603
 
 WPCL claim against Ms former employer for payment for unused vacation time.
 
 Id.
 
 The plaintiffs employment contract was non-specific in that it did not provide a set number of days employees were entitled to use for vacation per year.
 
 Id.
 
 at 1326. However, the plaintiff asserted that it was his employer’s unwritten policy to allow employees twenty paid vacation days which, if unused, could be carried over to the next year.
 
 Id.
 
 To substantiate his argument, the plaintiff offered two memo-randa which he sent to his employer indicating his expectation that he would be able to carry over two unused vacation days into the next year.
 
 Id.
 
 His employer never responded to these memoranda, and the plaintiff believed that his understanding of the vacation policy was correct.
 
 Id.
 
 In granting the defendant’s motion for summary judgment with respect to this claim, the court pointed out that the plaintiff had pointed to no contractual provision which could support his claim.
 
 Id.
 
 Accordingly, the court held that plaintiff’s claim regarding his vacation days fell outside the four corners of the contract, and as such, the WPCL was inapplicable.
 
 Id.
 

 In the instant case, Mr. McIntyre has failed to establish that PSC breached his contractual right to earned wages, specifically the right to the stock options which became exercisable only after his retirement. Rather, the contract specifically vested the Committee with the discretion to administer the Plan in virtually all respects. The Committee properly exercised that discretion in determining that Mr. McIntyre was not entitled to exercise the stock options. According to the contract, the parties agreed that the Committee’s determination was final and conclusive. As such, Mr. McIntyre’s claim falls outside the four corners of the contract because he has agreed that determinations regarding the Plan are to be made by the Committee. There is no provision in any of the grants entitling Mr. McIntyre to judicial review of the Committee’s decisions. Therefore, Mr. McIntyre may not now repeat his attempt to exercise the options before this Court simply because his request before the Committee was unsuccessful. Accordingly, summary judgment is granted in favor of PSC on all counts in the Complaint.
 
 [5]
 

 [1]
 

 . Mr. McIntyre's awareness of the Company’s understanding of the Stock Option Plan came about as a result of an inquiry by another PSC employee, John Grantland. Grantland, upon retirement, “questioned the ability to be able to exercise” options which did not vest while he was employed. PL’s Dep. at 55. Prior to retiring, Mr. McIntyre also met with Roy Stahl, PSC’s General Counsel, and Patricia Mycek, a corporate secretary at PSC, and left the meeting with the impression that PSC would not permit him to exercise options after retirement which were not yet exercisable during his employment.
 
 Id.
 
 at 54-56.
 

 [2]
 

 . Mr. McIntyre’s Motion and Response papers are virtually devoid of any mention of this issue, let alone argument, except with respect to his theory under the Independent Business Judgment Rule, which will be addressed later.
 

 [3]
 

 . Mr. McIntyre attempts to distinguish
 
 Ray-buck
 
 based on his "suspicion” that the plain
 
 *600
 
 tiff's benefits would have been upheld had he not gone to work for a competitor of his former employer. However,
 
 Raybuck
 
 provides no suggestion of support for this bald assertion. Rather, the Plan in
 
 Raybuck
 
 vested the Committee with broad authority to cancel any option "in the best interests of the corporation,” and, as such, presumably would have allowed the Committee to cancel the plaintiff's benefits for a myriad of reasons even had he not accepted employment with a competitor.
 

 [4]
 

 . In his response to PSC’s summary judgment motion (and cross-motion for partial summary judgment), Mr. McIntyre appears to set forth a cause of action in breach of contract based on the "Independent Business Judgment Rule.” Mr. McIntyre seems to argue that the Committee is liable to him for not exercising independent business judgment when it denied him the right to exercise the options. However, Mr. McIntyre misstates the Business Judgment Rule and its appropriate context. "The business judgment rule reflects a
 
 *601
 
 policy of judicial noninterference with business decisions of corporate managers, presuming that they pursue the best interests of their corporations, insulating such managers from second-guessing or liability for their business decisions in the absence of fraud or self-dealing or other misconduct or malfeasance.”
 
 Cuker v. Mikalauskas,
 
 547 Pa. 600, 692 A.2d 1042, 1046 (1997). In other words, it does not provide a theory of imposing liability upon officers and directors of the corporation who allegedly have not used independent judgment. Rather, it is a defense that individual officers and directors may avail themselves of in shareholder derivative suits, by asserting that the officers' or directors’ challenged actions were a result of their business judgment, rather than a breach of loyalty to the corporation. This is not a shareholder derivative suit, and Mr. McIntyre has sued PSC, not its individual directors or officers. As such, Mr. McIntyre simply cannot hold the Committee liable for breach of the Independent Business Judgment Rule; no such cause of action exists under Pennsylvania law.
 

 [5]
 

 . We note Mr. McIntyre's final argument, entitled “The Law of-the-Case Doctrine,” whereby he asserts that “interim rulings of a court are intended to be dispositive unless controlling law has changed, new facts come to light or previous rulings are plainly wrong and adhering to them would be unjust.” Pl.’s Brief at 18. Mr. McIntyre suggests that because this Court denied PSC’s prior Motion to Dismiss, and "nothing new of either a factual or legal nature has transpired subsequent to discovery to disturb the Court’s previous ruling ... dismissal is compelled (though not required) to promote judicial efficiency.”
 
 Id.
 
 However, no case directs us to deny PSC's Motion for Summary Judgment simply because its Motion to Dismiss was denied. Such a proposition would senselessly rob parties of the protection afforded by Federal Rule of Civil Procedure 56.
 

 Moreover, while Mr. McIntyre purports to advocate "judicial efficiency,” that purpose would indeed be ill-served if courts were required to hear cases which, as here, can clearly be adjudicated as a matter of law.