**Alex TSE, et al., Plaintiffs,**

v.

**VENTANA MEDICAL SYSTEMS, INC., et al., Defendants.**

**No. Civ.A. 97–37–GMS.**

United States District Court, D. Delaware.

Nov. 22, 2000.

Joel E. Friedlander, Bouchard Margules & Friedlander, Wilmington, DE, of counsel Emil Hirsch, Freedman, Levy Kroll & Simonds, Washington, DC, for plaintiffs.

Jesse A. Finkelstein, Raymond J. DiCamillo, Richards Layton & Finger, Wilmington, DE, of counsel Steven M. Schatz, David J. Berger, Elizabeth M. Saunders, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendants.

### *MEMORANDUM OPINION*

SLEET, District Judge.

## I. INTRODUCTION

This action arose out of a merger between Ventana Medical Systems, Inc. and

Biotek, Inc. The plaintiffs, Alex Tse, Margaret Wai Lam Leung, Michelle Leung, and Ching–Shuang Shih, ("Tse plaintiffs") are former shareholders of Biotek. The defendants are Ventana Medical Systems, Inc., as well as two of its directors, Jack W. Schuler ("Schuler") and John Patience ("Patience"). The plaintiffs filed this action alleging violations of Rule 10b–5 promulgated under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a et seq. ("1934 Act"). Presently before the court is Ventana's motion for summary judgment. The court will grant Ventana's motion. Summary judgment is appropriate in this case because the plaintiffs have failed to establish that the defendants' conduct caused them any economic loss, and because the plaintiffs have failed to show that the defendants acted with the requisite scienter.[1]

## II. STANDARD OF REVIEW

In deciding a motion, the court may grant summary judgment only when the submissions in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *In re Phillips Petroleum Sec. Litigation,* 881 F.2d 1236, 1243 (3d Cir.1989); *see also Kline v. First W. Gov't Sec., Inc.,* 24 F.3d 480, 485 (3d Cir.1994). Thus, the party opposing summary judgment cannot simply rest upon mere allegations, but rather must present "significant probative evidence tending to support the complaint." *See In re Phillips,* 881 F.2d at 1243; *Kline,* 24 F.3d at 485 (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts"). In determining whether there are any issues of material fact, the

court must construe the facts and inferences in the light most favorable to the non-moving party. *See Securities and Exchange Commission v. Adoni,* 60 F.Supp.2d 401, 411 (D.N.J.1999) (citing *Carnegie Mellon Univ. v. Schwartz,* 105 F.3d 863, 865 (3d Cir.1997)). With these standards in mind, the court turns to a recitation of the relevant facts giving rise to this lawsuit.

## III. BACKGROUND

### A. Procedural History

Because the parties dispute rulings of a predecessor judge in this matter, the court will briefly describe the relevant procedural history. The plaintiffs filed their original complaint on January 17, 1997. The case was assigned to Judge Joseph J. Longobardi. Six months later it was reassigned to Judge Sue L. Robinson. On November 25, 1997, Judge Robinson denied the defendants' motion to transfer the case to the District of Arizona or the Central District of California. *See Tse v. Ventana,* No. C.A. 97–37 SLR, 1997 WL 811566 (D.Del. Nov. 25, 1997). Judge Robinson also denied the defendants' motion to dismiss on September 23, 1998. *See Tse v. Ventana,* No. C.A. 97–37 SLR, 1998 WL 743668 (D.Del. Sept.23, 1998). On September 28, 1998, the case was reassigned to this Judge.

Because the factual background of this litigation has already been discussed in detail in previous opinions, it will be summarized briefly here.

### B. Factual Background

The Tse plaintiffs were investors in Biotek Solutions, Inc., ("Biotek"), which agreed to merge with defendant Ventana Medical Systems, Inc. ("Ventana") on January 19, 1996. Up until that time, Ventana and Biotek were competitors in the

---

**1.** The plaintiffs also allege a state law fraud claim based on the same merger. The court will not address this related state law fraud claim because it involves the same elements

as the plaintiffs' 10b–5 securities fraud claim. Thus, the state law claim fails as a matter of law as well.

biomedical technology field. In return for investments made between 1992 and 1995, the Tse plaintiffs received Biotek common stock and Biotek promissory notes. *Tse v. Ventana*, No. C.A. 97–37 SLR, 1998 WL 743668, at *1 (D.Del. Sept.23, 1998). At the time of the merger, the Tse plaintiffs owned a little over 9% of Biotek stock and promissory notes. *Id.* at *3. Under the terms of the Merger, Biotek stock would be surrendered without payment, and Biotek promissory notes would be exchanged for convertible debt securities to be issued by Ventana called "Ventana Exchange Notes." Plaintiff's Brief, at 11. The Ventana Exchange Notes were convertible within 30 days of the merger into Ventana common stock at a rate of $5.00 per share. *Id.*

On January 16, 1996, just three days before the merger agreements were signed, the Ventana board approved in principle a compensation package for directors, Schuler and Patience. On February 23, 1996, the Ventana board officially approved a compensation package that called for Ventana to issue Schuler and Patience 1.75 million shares of Ventana Common Stock at $.60 a share. According to the plaintiffs, the sale of Ventana common stock at $.60 a share was specifically conditioned upon the merger between Ventana and Biotek being completed in accordance with the terms of the agreement reached in January of 1996. Pl's Brf., at 10.

In early February, Biotek's board sent a letter to all holders of Biotek securities soliciting their approval of the planned Merger and explaining the benefits of the merger as well as the risks, if not approved. The Biotek letter also included a joint Ventana/Biotek Information Statement that contained a detailed description of the merger terms. The Merger Agreement and a Plan of Reorganization were included as exhibits to the Information Statement. None of these documents disclosed to Biotek investors information about the Ventana compensation package that had been approved in principle on January 16th. This information was disclosed, however, to Ventana stockholders on February 2, 1996 in a proxy statement for the upcoming annual Ventana shareholders meeting. On February 23, 1996, the Biotek investors voted to approve the merger, which became effective three days later.

The Tse plaintiffs claim that Ventana and its directors, Schuler and Patience, committed securities fraud by 1) failing to disclose information about the compensation package to Biotek investors; and 2) misrepresenting or fraudulently implying that the $5.00 conversion price offered for Ventana Exchange Notes was the fair market value of Ventana stock.

## IV. DISCUSSION

The Tse plaintiffs contend that the alleged omissions and misrepresentations regarding the compensation package subject Ventana to liability under section 10(b) of the 1934 Act, which makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security, ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C.A. § 78j(b) (1997). Rule 10b–5, in turn, makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(b). These provisions create a private right of action for plaintiffs to recover damages for "false or misleading statements or omissions of material fact that affect trading on the secondary market." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir.1999); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir.1997).

To state a claim for securities fraud under Rule 10b–5, a plaintiff must demon-

strate that a defendant (1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 174 (3d Cir.2000); *see also Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 269 (3d Cir.1998) (citing *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 296 (3d Cir.1991)). If the plaintiff fails to allege any of these elements, the court must grant summary judgment in favor of the defendant. *See EP Medsystems v. Echocath*, 30 F.Supp.2d 726, 743 (D.N.J.1998) (citing *In re Donald Trump Sec. Litig.*, 7 F.3d 357, 368 n. 10 (3d Cir. 1993).

Also, because a Rule 10b–5 claim sounds in fraud, the circumstances constituting the fraud must be stated with particularity. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir.1996). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In order to satisfy Rule 9(b), a plaintiff must plead "(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *In re Westinghouse*, 90 F.3d at 710.

**A. Alleged Misstatements or Omissions of Material Fact**

The Tse plaintiffs claim that Ventana and its directors, Schuler and Patience,[2] committed securities fraud first, by mis-

representing or fraudulently implying that the $5.00 conversion price offered for Ventana Exchange Notes was the fair market value of Ventana stock; and second, by failing to disclose information about the compensation package to Biotek investors. Each alleged violation will be discussed separately.

**1. Basis for the $5.00 conversion rate.**

█ The Tse plaintiffs allege that the defendants failed to disclose that the $5.00 conversion price bore no relationship to the fair market value of Ventana common stock in the Information Statement, or in the alternative that the defendants "impliedly misrepresented" the basis for the conversion rate. The plaintiffs argue that setting forth the conversion rate " without qualification or disclosure of the lack of any reasonable equivalence, much less the lack of any relationship between the $5.00 and the fair market value of the shares, is misleading and deceptive in an [sic] of itself, insofar as it obviously suggests to the prospective noteholder that $5.00 is the fair market value." The court is unpersuaded by both of the plaintiffs' arguments.

First, the record indicates, and the plaintiffs do not dispute, that the basis for the conversion price was disclosed to Michael Danzi, Biotek's CEO and chief negotiator.[3] Thus, it would appear that Ventana actually did disclose this information to Biotek. Consequently, this element of the plaintiffs' 10b–5 claim fails. *See Wallace v. Systems & Computer Tech. Corp.*, No. 95–CV–6303, 1997 WL 602808, 1997 U.S.Dist. Lexis 14677, at *22 (E.D.Pa. Sept. 23, 1997) (stating that a complaint is "doomed to failure" when alleged omissions were actually disclosed); *Rubenstein v. IU Int'l Corp.*, 506 F.Supp. 311, 314 (E.D.Pa.1980).

---

**2.** Although, the Tse plaintiffs claim that the disclosures made to them were controlled by Ventana, they do not provide sufficient evidence for such a claim.

**3.** Instead, the Tse plaintiffs claim that Danzi never communicated to them that the $5.00

conversion price bore no relationship to the fair market value of Ventana Common Stock. Pl's Brf., at 16 n. 19. Even if this is true, however, this disclosure tends to negate the allegations of affirmative concealment of the basis for the $5.00 conversion price.

Biotek and Ventana began negotiations in 1995. During the course of these negotiations, Danzi was told that the $5.00 conversion rate was not intended to represent the fair market value of the stock. Instead, the price was calculated so that if every Biotek noteholder converted the notes into stock, they would not own more than 10% of the combined companies. Thus, the conversion price served as an anti-dilution measure.

The court is equally unpersuaded by the plaintiffs' contention that the $5.00 conversion rate "obviously suggests" that the price is the fair market value of the stock. The plaintiffs' implied misrepresentation theory cannot succeed when the basis for the stock valuation was disclosed in an arms-length transaction, as was the case here. *See Dower v. Mosser Ind., Inc.*, 488 F.Supp. 1328, 1339 (E.D.Pa.1980). In affirming *Dower*, the Third Circuit explicitly rejected the plaintiffs' implied misrepresentation argument: "We also reject plaintiffs' contention that [defendant] placed a high, subjective value on the minority shares and that this fact should have been disclosed to the shareholders." *Dower v. Mosser Ind., Inc.*, 648 F.2d 183, 188 (3d Cir.1981)

The plaintiffs also rely on *Speed v. Transamerica*. In that case, the court concluded that a parent corporation's offer to buy out minority shareholders at a premium above the current market price of the stock "impliedly represented that the price offered was a fair price at that time." *Id.* 99 F.Supp. 808, 843 (D.Del. 1951). The plaintiffs' reliance on this case is misplaced, however, because in *Speed* the parent company was a fiduciary of the minority shareholders. *See id.* at 828. Moreover, acting on information that it alone possessed about the stock's true value, the parent company concealed this information from the minority shareholders. *See id.* Thus, based on the fraudulent disclosures made, the parent company "impliedly represented" the fair value of the stock. *See id.* Here no such relationship existed between the parties. Ventana did not have to offer the Tse plaintiffs the "fair market value" of the stock. Ventana willingly disclosed the basis for its calculus and negotiated the conversion rate with Biotek in an arms-length transaction. Thus, Ventana clearly made no implied representation as to the basis for the conversion rate.

In a related case arising out of the same set of facts, but involving different plaintiffs asserting various state law claims, the Delaware Court of Chancery also found that the $5.00 conversion price did not "obviously suggest" that the rate represented the fair market value of the stock. *See Leung v. Schuler*, No. 178089, 2000 WL 264328, at *11 (Del.Ch. Feb. 29, 2000) (hereinafter *"Leung I"*). In *Leung I*, a related group of plaintiffs filed a class action against Ventana in connection with the Merger and the Patience/Schuler compensation package. In this action, the plaintiffs asserted various stockholder derivative claims including waste of assets and breach of fiduciary duties. The Delaware Court of Chancery dismissed these claims. *See id.*

The Chancery Court also rejected the implied misrepresentation argument. The Vice Chancellor wrote: "Nowhere is it alleged that any Biotek noteholder was told that the [$5.00 pre-reverse split] conversion rate being offered in the Merger was the fair market value of the Ventana stock, nor is it fair to infer that equivalence. The inference that is fair and reasonable is that the conversion price offered to the Biotek noteholders was equal to the amount and value of the equity Ventana was willing to pay for Biotek." *Id.* at *11.

Because Ventana disclosed the basis for the conversion rate to the Biotek board and because Ventana was under no duty to offer the Tse plaintiffs a "fair" price in a negotiated, arms-length transaction, the court finds that the plaintiffs' allegation that Ventana misrepresented the basis for the $5.00 conversion rate fails to state a

claim under Rule 10b–5 for securities fraud.

### 2. Compensation Package

The plaintiffs also alleged that Ventana failed to disclose a material fact by not revealing the terms of the compensation package offered to Patience and Schuler. This failure, say the plaintiffs, constituted another breach of the provisions of Rule 10b–5. The defendants counter that they had no duty to disclose this information to the Tse plaintiffs because the plaintiffs were not shareholders of Ventana at the time the compensation package was approved. The defendants argue further that even if there was a duty to disclose this information, it would not have been material. The court will address each of the defendants' contentions in turn.

### a. Duty to Disclose the Compensation Package

■ The plaintiffs argue that Ventana as well as Patience and Schuler had a duty to disclose the compensation package because of the relationship between the two parties.[4] In denying Ventana's motion to dismiss, a predecessor Judge has already ruled that Ventana did have a duty to disclose the compensation package to the Tse plaintiffs because the company was "trading in its own securities."[5] *See Tse v. Ventana,* 1998 WL 743668 at *8. Judge Robinson's opinion explained that when Ventana approved in principle the Schuler/Patience compensation package, this constituted an "insider transaction" by Ventana. *Id.* The court acknowledged that generally there is no duty of disclosure between an acquirer and a target's shareholders. *Id.; see also Staffin v. Greenberg,* 672 F.2d 1196 (3d Cir.1982), *rev'd on other grounds,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Gordon v. Diagnostek,* 812 F.Supp. 57 (E.D.Pa.1993). The court found that there was a duty of disclosure, however, when an acquiring corporation "traded in its own securities." *Id.* (citing *Voit v. Wonderware Corp.,* 977 F.Supp. 363, 369 (E.D.Pa.1997). Finally, the court held that this "duty extends not only to existing shareholders but also to nonshareholders when sales of securities are made to them." *Id.* (citing *In re Cady, Roberts & Co.,* No. 8–3925, 1961 WL 3743, at *5, (Nov. 8, 1961) and *Gratz v. Claughton,* 187 F.2d 46, 49 (2d Cir.1951)).

The parties dispute whether Judge Robinson's ruling is the law of the case on the issue of Ventana's duty to disclose the compensation package to the Tse plaintiffs. The law of the case doctrine limits the extent to which an issue previously decided by a court of coordinate jurisdiction will be reconsidered by a successor court. *Fagan v. City of Vineland,* 22 F.3d 1283, 1290 (3d Cir.1994). Principles of comity dictate that when a predecessor court of equivalent jurisdiction decides an issue, that decision should govern in subsequent stages of the same case. *Matter of Resyn Corp.,* 945 F.2d 1279, 1281 (3d Cir.1991) (citing

---

4. The plaintiffs also argue that there is a duty to disclose based on warranties made in the Reorganization Agreement. The court will not address these arguments because of the predecessor court's earlier ruling establishing a duty in *Tse v. Ventana,* 1998 WL 743668. The court notes, however, that the Delaware Court of Chancery rejected this argument in *Leung I* because the plaintiffs were not actually a party to the Reorganization agreement. *See id.* 2000 WL 264328, at *4–5 ("The difficulty with this claim is that the plaintiff was not a party to the Reorganization Agreement, and he therefore lacks standing to enforce it.").

5. In regards to the Patience/Schuler compensation package, the Delaware Court of Chancery held in *Leung I* that 1) defendants had no fiduciary duty under Delaware law to disclose the compensation package to the plaintiffs because plaintiffs were *not* stockholders of the defendant's corporation, 2) defendants had no contractual duty to disclose information about the compensation package to the plaintiffs because plaintiffs were not a party to the merger agreements, and 3) plaintiffs did have standing to bring stockholder derivative claims, but these claims should be dismissed, because the directors did not breach any duties in approving the sale. *See generally Leung v. Schuler,* 2000 WL 264328

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). Moreover, although the law of the case doctrine does not prohibit a judge from reconsidering issues previously decided by a predecessor judge from the same court, it does recognize that a successor judge should not "lightly overturn decisions of his predecessors in a given case." *Fagan*, 22 F.3d at 1290. Also, "[l]itigants have a right to expect that a change in judges will not mean going back to square one." *Williams v. Commissioner of Internal Revenue*, 1 F.3d 502, 503 (7th Cir.1993) (noting that just because a judge has a different view of the law from a prior judge's decision, the judge is not free to reconsider issues already decided). Thus, the court should only reopen matters decided earlier in litigation in extraordinary circumstances such as where: 1) a predecessor judge is unavailable; 2) new evidence is available; 3) a supervening new law has been announced; or 4) the earlier decision was clearly erroneous and would create manifest injustice. *Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir.1984).

In this case, the law of the case doctrine bars reconsideration of the issue of Ventana's duty to disclose the compensation package to the Tse plaintiffs. Because none of the traditional exceptions to the law of case doctrine apply here, the court will not revisit the question of whether the defendants had a duty to disclose the Schuler/Patience Compensation package.[6] *See Atlantic Coast Demolition & Recycling, Inc. v. Atlantic County*, 112 F.3d 652, 663 (3d Cir.1997) (declining to reconsider issues previously resolved by an earlier panel). Consequently, the court finds that Ventana had a duty to disclose the compensation package to the Tse plaintiffs

because Ventana "traded in its own" securities in connection with the Merger.

### b. Materiality of the Compensation package

 The defendants also argue that even if they had a duty to disclose the compensation package, this information would not have been material to a reasonable investor. A misleading statement or omission is material if there is a "substantial likelihood" that the reasonable investor would have viewed the statement or omission "as having significantly altered the 'total mix' of information made available." *Wallace v. Systems & Computer Tech. Corp.*, No 95–CV–6303, 1996 WL 195382, at *3 (E.D.Pa. Apr.19, 1996) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)); *see also In re Craftmatic Sec. Litig.*, 890 F.2d 628, 639 (3d Cir.1989) (omission is material if it is substantially likely that it would have "assumed actual significance in the deliberations of a reasonable shareholder"). Although materiality is a mixed question of law and fact ordinarily decided by the trier of fact, if the alleged misrepresentations and omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality, the court may rule that the allegations are not actionable as a matter of law. *Wallace*, 1996 WL 195382, at *3 (citing *In re Donald J. Trump Sec. Litig.*, 7 F.3d 357, 369 n. 13 (3d Cir.1993)). In this instance, the court will not so rule.

 The defendants contend that because Biotek's only options were merger or bankruptcy, the compensation package would not have been material since the only issue for the Tse plaintiffs was wheth-

---

6. The defendants contend that because the earlier ruling addressed a motion to dismiss, the law of the case doctrine should not control issues in connection with a motion for summary judgment. Defendant's Reply Brief, at 10; *see also Hawksbill Sea Turtle v. Federal*

*Emergency Management Agency*, 126 F.3d 461, 474 n. 11 (3d Cir.1997). This argument is unconvincing, however, because in this case neither party has adduced new evidence as to the issue of Ventana's duty to disclose.

er their promissory notes would be paid.[7] However, the Tse plaintiffs have adduced evidence showing that had they known about the more favorable terms of the compensation package and its significance to the consummation of the Merger, they would have held out their votes to get more favorable terms. Under these circumstances, a jury could agree that the compensation package and its terms would have been material to a reasonable investor in the Tse's position.

### B. Loss Causation

■ Under Rule 10b–5, once a plaintiff establishes that a defendant made an omission or misstatement of material fact, a plaintiff must also establish that the defendant's fraudulent conduct caused it to enter the transaction (transaction causation) and caused its pecuniary loss (loss causation). *See Tse v. Ventana,* 1998 WL 743668, at *6 (citing *Scattergood v. Perelman,* 945 F.2d 618, 622 (3d Cir.1991)). As Judge Robinson has already noted, in cases such as this one, where the defendants allegedly failed to disclose material information, transaction causation is presumed. *See id.* Thus, the court will only address whether the defendants' conduct caused the plaintiffs' pecuniary loss.

The defendants claim that the Tse plaintiffs cannot establish loss causation because it is undisputed that the Ventana Exchange Notes were repaid. Thus, they contend, the Tse plaintiffs cannot prove out-of-pocket damages. Out-of-pocket losses are the standard measure of damages for a 10b–5 claim, and are defined as: "the difference between the fair value of all that the seller received and the fair value of what he would have received had there been no fraudulent conduct." *Affiliated Ute Citizens of Utah v. U.S.,* 406 U.S. 128, 155, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *see also Sharp v. Coopers & Lyb-*

*rand,* 649 F.2d 175, 190 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

In deciding the defendants' motion to dismiss, Judge Robinson has already ruled that although the Tse plaintiffs do not have a claim for out-of-pocket damages because their bonds were repaid, they may have a claim under a "lost opportunity" theory. *See Tse v. Ventana,* 1998 WL 743668, at *6 (citing *Gould v. American–Hawaiian S.S. Co.,* 535 F.2d 761 (3d Cir. 1976)). Judge Robinson reasoned that although the Tse plaintiffs' "consent was not necessarily required to effectuate the merger, [they] were in a relatively strong bargaining position." *Tse,* at *7. Thus, at the pleading stage the court could not conclude that the Tse plaintiffs could not have "prevailed upon Ventana to pay a higher price for Biotek." *Id.*

The plaintiffs contend that this court should consider itself bound by Judge Robinson's earlier ruling on loss causation as well. As to this issue, the plaintiffs' argument is unavailing. The Tse plaintiffs ignore the fact that Judge Robinson's earlier ruling was on a motion to dismiss the plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Presently before the court is a motion for summary judgment. The court must now take into consideration evidence that has been developed through discovery. The law of the case doctrine does not preclude a grant of summary judgment in favor of a defendant whose motion to dismiss had been previously denied. *See McIntyre v. Philadelphia Suburban Corp.,* 90 F.Supp.2d 596, 603 n. 5 (E.D.Pa.2000). "Such a proposition would senselessly rob parties of the protection afforded by Federal Rule of Civil Procedure 56." *Id.* Consequently, the court will further address whether the Tse plaintiffs can prove that

---

**7.** The parties disagree as to whether Biotek's only alternatives were merger or bankruptcy. Ventana argues that Biotek's only option was a merger or bankruptcy, and thus Biotek was in a very weak bargaining position. The plaintiffs argue that Biotek had other alternatives that gave it more bargaining power. Because the court must construe facts in a light most favorable to the plaintiffs, it finds that Biotek may have had more alternatives.

defendants' alleged omissions caused them actual pecuniary loss.

Under Third Circuit case law, a plaintiff can maintain a 10b–5 action based on "lost opportunity" damages. *Gould v. Hawaiian–American*, 535 F.2d at 781; *see also Rudinger v. Insurance Data Processing, Inc.*, 778 F.Supp. 1334, 1340 (E.D.Pa.1991). Under *Gould v. Hawaiian American*, a plaintiff who cannot prove out of pocket damages may prove "loss of a possible profit or benefit, [defined as] an addition to the value of one's investment, unless the loss is wholly speculative."[8] *Id.* at 781. Thus, the only issue to be resolved is whether the Tse plaintiffs' alleged financial loss is too speculative to sustain this 10b–5 action.

▮ In this case, the Tse plaintiffs claim that their lost profits would have been derived from the opportunity to withhold their votes for the merger in order to receive a more favorable conversion rate. "The important element in allowing a recovery for other than out-of-pocket damages is whether the asserted damage is actual and nonspeculative." *Hershock v. Fiascki*, No 90–0497, 1992 WL 164739, at *7 (E.D.Pa. July 2, 1992). In general, lost opportunity damages are not "wholly speculative" if they are based on "certain, fixed, and demonstrable profits thwarted by a defendant's alleged fraud." *Rudinger*, 778 F.Supp. at 1341.[9]

▮ For example, damages based on lost profits have been granted: 1) where some favored shareholders were paid more for their shares than others without disclosure of the disparate treatment of shareholders (the court reasoning that with disclosure, the shareholders could have negotiated to share the premium that had been paid), *see Gould*, at 782; and 2) where a plaintiff chose employment based on fraudulently overvalued stock options in lieu of employment and stock options from another company, whose offer was declined (the court reasoning that the plaintiff could have taken the other offer which was "certain, fixed, and calculable to the penny"), *see Rudinger*, at 1337. In contrast, damages based on lost opportunity have not been granted: 1) where the plaintiff fails to prove that there actually was a lost opportunity (reasoning that a claim of possible entitlement to a better premium is not the same as a lost opportunity), *see Rubenstein v. IU Int'l Corp.*, 506 F.Supp. at 316; and 2) where a plaintiff fails to show that the alleged misrepresentations concerned the value of his investment, *see Letson v. Dean Witter Reynolds, Inc.*, 532 F.Supp. 500, 510 (N.D.Ca.1982).

In this case, the Tse plaintiffs cannot show that the defendants' alleged conduct caused them to miss an actual and nonspeculative opportunity to convert at a better rate. In contrast to both *Gould* and *Rudinger*, the Tse plaintiffs cannot show that a more favorable conversion rate was available. In *Gould*, it was clear that some shareholders received a better deal than others because of the defendant's fraud. And, in *Rudinger*, there was another offer that the plaintiff missed because of defendant's fraud. Here, the Tse plaintiffs argue that they could have held out for a better deal.[10] Construing the

---

8. The defendants' contention that *Gould* is inapposite because it was an action under Section 14(a) of the 1934 Act regarding false or misleading proxy statements, is without merit because lost opportunity claims are clearly appropriate for 10b–5 claims as well. *See Dofflemyer v. W.F. Hall Printing Co.*, 558 F.Supp. 372, 380 n. 6 (D.Del.1983) ("Likewise, for a 10b–5 claim, ... it is clear that this standard also requires that the value of lost opportunities be taken into account"); *see also Rudinger v. Insurance Data Processing, Inc.*, 778 F.Supp. at 1339 n. 9.

9. *Gould v. Hawaiian American* does not expressly define "wholly speculative" damages.

10. In ruling on the motion to dismiss, Judge Robinson acknowledged that the Tse plaintiffs did have bargaining power. The court does not ignore that bargaining power. Nonetheless, the summary judgment record establishes that: 1) there was disclosure of the basis for the conversion rate, 2) the rate was actually negotiated, and 3) the defendants did not fraudulently imply a "fair rate" on which to base a lost opportunity claim.

evidence in the light most favorable to plaintiff, it seems clear that both companies wanted and needed the Merger. It is also clear that the $5.00 conversion rate was openly discussed and negotiated. What is not clear, however, is that the plaintiffs, as minority investors, could have held out for a more favorable deal for themselves. The plaintiffs want the court to participate in their speculation as to whether the defendants would have given them a better deal than it actually offered the company in negotiations. The plaintiffs also want the court to speculate as to what would have been a "fair" conversion rate even though Biotek's board negotiated this issue with Ventana. Thus, at best the plaintiffs allege that they should be entitled to an unidentified conversion rate that they deem to be more "fair" than the number derived from an arms length transaction.[11] *See Rubenstein v. IU Int'l Corp.,* 506 F.Supp. at 316 ("[P]laintiff can point to no missed opportunity for profit here: He can at best argue that he was entitled to a control premium. This will not support a claim for lost opportunity for profit inasmuch as it is 'too speculative.' "). Because the plaintiffs want the court to hypothesize as to whether Ventana would have given them a more favorable rate and to hypothesize as to what that rate would be, their claim for lost profits is wholly speculative.[12]

More important, the plaintiffs' case stands in sharp contrast to *Gould* and *Rudinger* because the alleged omissions here do not directly concern the value of the plaintiffs' investments. "Where the value of the security does not actually decline as a result of an alleged misrepresentation, it cannot be said that there is in fact an economic loss attributable to that misrepresentation." *Semerenko v. Cendant Corp.,* 223 F.3d 165, 185 (3d Cir. 2000). In both *Gould* and *Rudinger,* the plaintiff's lost opportunity claims were viable because "investors were prevented from making informed investment decisions as a result of having been misled as to the quality or value of their investments." *Letson v. Dean Witter Reynolds, Inc.,* 532 F.Supp. at 510 (rejecting a similar speculative lost opportunity claim and contrasting similar cases). As has already been discussed, there was no actual or implied misrepresentation or omission concerning the $5.00 conversion rate. The other alleged omission concerned the Patience/Schuler compensation package. Although that information undoubtedly may have been material, it concerned compensation for Ventana board members, not the value of the Tse plaintiffs' investments.

Although the plaintiffs argue that knowledge of the terms of the compensation package would have alerted them to the possibility of a better deal, this argument is also unpersuasive. Considering that Ventana had considerable discretion in determining the price for issuing shares to its directors, the plaintiffs have not shown that there is an actual relationship between the cost of the compensation package and the conversion rate. *See* Del-Code. Ann. tit. 8 § 152 & 153(a).[13] A

---

**11.** As the court has already noted, Ventana was under no obligation to offer the plaintiffs a "fair" conversion rate, but rather the rate that it was willing to pay.

**12.** The court notes that if the plaintiffs' damages were merely difficult to ascertain, rather than speculative, then loss causation would be a jury question. For example, in *Hershock v. Fiascki,* 1992 WL 164739, at *7, the court explained that in cases where the opportunity to profit is clear, but the actual profits themselves are speculative, the jury should be allowed to determine whether the damages are too speculative to calculate or not. *See also*

*Whitbread Holdings, Inc. v. Baron Philippe de Rothschild,* 630 F.Supp. 972, 981 (S.D.N.Y. 1986) (noting that inquiry into lost profits can require some speculation).

**13.** Specifically, the relevant section reads in part, "The consideration, as determined pursuant to subsections (a) and (b) of § 153 of this title, for subscriptions to, or the purchase of, the capital stock to be issued by a corporation shall be paid in such form and in such manner as the board of directors shall determine. In the absence of actual fraud in the transaction, the judgment of the directors as to the value of such consideration shall be

similar argument tying the terms of the compensation package with the $5.00 conversation rate was rejected twice by the Delaware Court of Chancery. *See Leung I*, at *9–10 (Ventana board determined that compensation package was commensurate with "value of services being performed"); *Leung v. Schuler*, No C.A. 17089, 2000 WL 1478538, at *5 (Del.Ch. Oct.2, 2000).

To summarize, the plaintiffs cannot establish the element of loss causation because its alleged losses are wholly speculative. The plaintiffs were not actually or impliedly promised that they were receiving the fair market value of the stock as a conversion rate, and information about the compensation package is not tied to the value of their investments. Because the Tse plaintiffs cannot show that omission of the compensation package caused them to lose the opportunity to convert at a better rate, they cannot establish loss causation.

## C. Scienter

In order to maintain a 10b–5 action, a plaintiff must not only establishes that a defendant's misrepresentation or omission of material information caused plaintiff's economic loss, but also that the defendant acted with scienter.[14] *See Semerenko v. Cendant Corp.*, 223 F.3d 165 at 174. Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *In re Phillips Petroleum Sec. Litig.*, 881 F.2d at 1244 (quoting *Dirks v. SEC*, 463 U.S. 646, 663 n. 23, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983)). To plead scienter, a plaintiff must allege facts "establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." *In re Advanta Sec. Litig.*, 180 F.3d at 534–35 (quoting *Weiner v. Quaker Oats Co.*, 129 F.3d

conclusive." Del.Code. Ann. tit. 8, § 152. In addition, if it was shown that the issuance was without consideration than plaintiff might have a stronger claim. *See Leung v. Schuler*, No C.A. 17089, 2000 WL 1478538, at *5 (Del.Ch. Oct.02, 2000).

310, 318 n. 8 (3d Cir.1997)). Recklessness, in turn, is defined as an extreme departure from the standards of ordinary care, which presents a danger of being misleading that is either known to the defendant or is so obvious that the actor must be aware of it. *Id.* Furthermore, in accordance with heightened pleading requirements, motive and opportunity, like all other allegations of scienter (intentional, conscious, or reckless behavior), must be supported by facts stated with particularity and must give rise to a "strong inference" of scienter. *Id.*

Initially, the court notes that Judge Robinson found that the plaintiffs made sufficient allegations to establish the element of scienter. *See Tse v. Ventana*, 1998 WL 743668 at *9–10. However, that finding was made before new evidence was discovered that proved those allegations to be unfounded. Thus, the plaintiffs have abandoned those earlier allegations of scienter. Pl's Brf., at 35. The plaintiffs now set forth several new allegations in an effort to establish scienter. The court will address them in turn. *See In re Westinghouse Sec. Litig.*, 90 F.3d at 712; *see also EP Medsystems, Inc. v. Echocath, Inc.*, 30 F.Supp.2d 726, 753 (D.N.J.1998) (noting that each allegation of fraud must be considered separately).

### 1. Allegations concerning motive and opportunity

The plaintiffs' first allegation of scienter claims that the compensation package gave Patience and Schuler a strong motive to retain control of Ventana. Pl's Brf., at 18. The court rejects this argument because it is well-established that the existence of executive compensation dependent upon stock value does not give rise to an inference of scienter. *In re*

**14.** Although the Tse plaintiffs' 10b–5 claim fails because they cannot allege loss causation, the court will also address whether the plaintiffs can establish scienter.

*Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1424 (if "incentive compensation" could be the basis for an allegation of fraud, "the executives of virtually every corporation in the United States would be subject to fraud allegations") (citations omitted); *accord Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir.1995) ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated.") (citations omitted).

The plaintiffs also attempt to establish that Patience and Schuler had the opportunity to commit fraud through vague allegations that the two directors "were in a position to control Ventana." Pl's Brf., at 35–6. This argument is clearly without merit because the plaintiffs later concede that neither director actually controlled the Ventana Board or made the decision not to disclose the package. *Id.*

Finally, to show motive and opportunity, the plaintiffs argue that: 1) 49% of the shares that Patience and Schuler own were issued because of the compensation package; 2) the amount that Schuler received from the package was his largest acquisition up until that point; and 3) although Patience and Schuler have not sold Ventana stock, they amassed a windfall.[15] Generally, a court will not infer fraudulent intent merely because some officer purchased stock, however, allegations that a trade was unusual in some way, may establish fraudulent intent. *See In re Home Health Corp. Sec. Litig.,* No. 98–834, 1999 WL 79057, at *16 (E.D.Pa. Jan. 29, 1999) (citing *In re Burlington Coat Factory,* 114 F.3d at 1424). Accepting the factual allegations as true, they still fail to support an inference of motive and opportunity or conscious wrongdoing in the context of the record as a whole. *See id.* (rejecting plaintiff's arguments that evidence of insider trade gave rise to inference of scienter). The plaintiffs do not dispute that Patience and Schuler only own about 7% of the

company as a result of the compensation package and the Merger, that the stock represents incentive compensation within the Ventana board's discretion, or that the defendants have not actually sold their shares to create a "windfall." Simply stated, the plaintiffs' allegations concerning motive and opportunity fail to create any inference that the defendants possessed the intent to deceive, manipulate, or defraud.

### 2. Allegations concerning recklessness

Next, the plaintiffs argue that the reports of their expert witnesses establish that the defendants were reckless in failing to disclose the details of the compensation package. Pl's Brf., at 34. In contrast, the defendants argue that the expert opinion of the plaintiffs cannot be used to establish scienter in the face of contrary evidence in the record. The defendants also claims that the expert's opinion is based on facts that the record has proven to be untrue. For example, the expert report assumes that defendants Patience and Schuler were in control of Ventana's board. The record before the court, however, clearly establishes that assumption to be erroneous. In this case, the defendants have the better argument. "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Advo, Inc. v. Philadelphia Newspapers, Inc.,* 51 F.3d 1191, 1198–99 (3d Cir.1995) (quoting *Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 242, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993)). Moreover, an expert's opinion cannot establish scienter when evidence in the record clearly rebuts an inference of bad faith. *See In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426 (9th Cir.1994). Because the

---

**15.** The plaintiffs also construe these allegations as evidence of conscious wrongful behavior. This distinction is irrelevant, as the

court finds both arguments to be unpersuasive.

conclusions of the Tse plaintiffs are based upon demonstrably false assumptions, they cannot be used to establish that the defendant's conduct was reckless.

### 3. Allegations concerning conscious wrongdoing

Finally, the plaintiffs allege that the record is replete with both circumstantial and direct evidence of conscious wrongdoing. The court finds the plaintiffs' allegations to be insufficient evidence of conscious wrongdoing because they fail to support a reasonable inference that the defendants acted to intentionally defraud the Tse plaintiffs. *See In re Westinghouse Sec. Litig.,* 90 F.3d 696, 712 (3d Cir.1996) (denying a plaintiff's scienter claim because the plaintiff's conclusory allegations did not support an inference of wrongful behavior); *see also EP Medsystems v. Echocath,* 30 F.Supp.2d at 756 (holding that a plaintiff's allegations did not produce a strong inference of fraudulent intent).

First, the plaintiffs offer circumstantial evidence to support an inference of conscious wrongdoing. The plaintiffs argue that the basis for the $5.00 conversion price was not disclosed. This circumstantial evidence, however, is simply not accurate even when the facts are construed in the light most favorable to the plaintiffs. Again, the record before the court simply does not support the plaintiffs' claim. All parties to the negotiation admit that the basis for the rate was disclosed. Tied to this claim is the plaintiffs' argument that Patience and Schuler made representations to the IRS about the value of the stock that prove that they consciously led Biotek to believe that the $5.00 conversion rate was the fair market value of the stock. This argument is also without merit, because again, the record shows that there was no misrepresentation with regard to the conversion rate.

Also, the plaintiffs offer circumstantial evidence that simply does not give rise to an inference of conscious wrongdoing at all. For example, the plaintiffs allege that Ventana acquired Biotek for less than its fair market value. Pl's Brf., at 36. This claim, however, does not give rise to an inference of conscious misbehavior as plaintiffs argue. Rather, it gives rise to an inference that Ventana negotiated a good deal with Biotek's board.

Finally, the plaintiffs argue that there is direct evidence that Patience and Schuler actively concealed the compensation package. For example, the plaintiffs point to a discussion between Schuler and a Biotek director on an unrelated matter. They attempt to characterize this as evidence that Schuler affirmatively concealed the compensation package from a Biotek director. Also, the plaintiffs claim that "persuasive evidence" of active concealment "exists in the form of Defendants' consistent 'flip-flopping.'" Again, when these vague and conclusory allegations are read in context of other undisputed facts in the record, they simply do not give to give rise to a genuine issue of material fact as to whether the defendants possessed the requisite fraudulent intent. *See In re Cendant Corp. Sec. Litig.,* 109 F.Supp.2d 225, 228 (D.N.J.2000) (nonmoving party must do more than "show that there is some metaphysical doubt as to the material facts").

Because the Tse plaintiffs cannot show that the defendants' fraudulently concealed the compensation package to induce them to support the Merger, they have not adequately alleged scienter.

### V. Conclusion

For the foregoing reasons, the Tse plaintiffs cannot show that defendants' failure to disclose the compensation package caused them actual economic loss or that the omission was done with the requisite scienter. Therefore, the court will grant the defendants' motion for summary judgment. The court will issue an order to this effect in conjunction with this opinion.