### In re: DAIMLERCHRYSLER AG SECURITIES LITIGATION

**Tracinda Corporation, a Nevada Corporation, Plaintiff,**

**v.**

**DaimlerChrysler AG, a Federal Republic of Germany corporation; Daimler–Benz AG, a Federal Republic of Germany corporation; Juergen Schrempp, a citizen of the Federal Republic of Germany; and Manfred Gentz, a citizen of the Federal Republic of Germany, Defendants.**

**Nos. CIV.A.00–993 JJF, CIV.A.00–984 JJF.**

United States District Court, D. Delaware.

Nov. 20, 2003.

A. Glichrist Sparks, III, Alan J. Stone, and Jessica Zeldin, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware,

Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, California (Terry Christensen, Mark G. Krum, Steven J. Aaronoff, and Mark I. Labaton, of counsel), William G. McGuinness, and Julie E. Kamps, of Fried, Frank, Harris, Shriver & Jacobson, New York, New York, for Plaintiff Tracinda Corporation.

Thomas J. Allingham II, and Robert S. Saunders, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York (Jonathan J. Lerner, J. Michael Schell, Joseph N. Sacca, and Jacob E. Hollinger, of counsel), for Defendants DaimlerChryler AG, Daimler–Benz AG, Jürgen Schrempp and Manfred Gentz.

## MEMORANDUM OPINION

FARNAN, District Judge.

Pending before me is Defendants' Motion For Summary Judgment (D.I.528) against Plaintiff, Tracinda Corporation ("Tracinda") on the grounds that Tracinda (1) cannot establish reasonable reliance as a matter of law for its claims of common law fraud and violations of Sections 10 and 20 of the Securities and Exchange Act of 1934 (the "Exchange Act"), (2) cannot establish loss causation as a matter of law for its claims of common law fraud and violations of Sections 10, 14 and 20 of the Exchange Act, and (3) cannot establish any of its claims for common law fraud, violations of the Exchange Act, and violations of Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act"), because Tracinda received what was promised in the Business Combination Agreement ("BCA") that effectuated the merger between Daimler–Benz and Chrysler Corporation ("Chrysler"). For the reasons discussed, Defendants' Motion will be denied.

## BACKGROUND

The underlying facts relevant to this action have been discussed fully in my previous decision in this matter. *See e.g. Tracinda v. DaimlerChrysler AG,* 197 F.Supp.2d 42, 49–53 (D.Del.2002). Facts relevant to the disposition of the instant Motion will be discussed, where appropriate, throughout the body of this Memorandum Opinion.

## STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

**I. Whether Defendants Are Entitled To Summary Judgment On Tracinda's Claims Of Common Law Fraud And Violations Of The Exchange Act On The Grounds That Tracinda Is Precluded From Establishing Reasonable Reliance As A Matter Of Law**

By their Motion For Summary Judgment, Defendants contend that Tracinda cannot prove reasonable reliance as a matter of law for three reasons: (1) Tracinda cannot rely on any alleged oral misrepresentations given the complex nature of the merger transaction; (2) the Integration Clause in the Stockholder Agreement precludes Tracinda from relying on the alleged oral misrepresentations; and (3) the substantive terms of the Stockholder Agreement and the Standstill Agreement preclude Tracinda from establishing reliance, because those Agreements obligated Tracinda to cast its votes regarding the merger in the same proportion as other shareholders and precluded Tracinda from soliciting proxies or otherwise seeking to influence the votes of Chrysler shareholders.

In response, Tracinda contends that the complex nature of the transaction does not bar reliance on oral misrepresentations and that its reliance on Defendants' alleged misrepresentations was reasonable, because Tracinda had a long-standing fiduciary relationship with Chrysler and had no opportunity to detect the fraud. With respect to the Integration Clause,

Tracinda contends that the existence of an integration clause is not a *per se* bar to reliance in a case based on underlying allegations of fraud. Further, Tracinda points out that it is not trying to enforce the written Stockholder Agreement such that it should be precluded from relying on any oral statements. As for the Stockholder and Standstill Agreements, Tracinda contends that it could have sued to void these agreements if it had known about the fraud, and therefore, the existence of these Agreements should not bar it from establishing reasonable reliance as a matter of law.

### A. *The Test For Reasonable Reliance*

 To establish its claims of common law fraud and a violation of the securities laws under Sections 10(b) and Rule 10b–5 of the Exchange Act, Tracinda must show that it reasonably relied on the alleged misrepresentations or omissions that form the basis of its claims. *In re Reliance Sec. Litig.*, 91 F.Supp.2d 706, 720 (D.Del.2000); *Browne v. Robb*, 583 A.2d 949, 955 (Del.1990). In the context of Rule 10b–5 claims, the Third Circuit has identified a non-exclusive list of factors for determining whether a plaintiff's reliance was reasonable. These factors include: (1) the existence of a fiduciary relationship; (2) the plaintiff's opportunity to detect the fraud; (3) the sophistication of the plaintiff; (4) the existence of a longstanding business or personal relationship; and (5) the plaintiff's access to the relevant information. *Straub v. Vaisman & Co.*, 540 F.2d 591, 598 (3d Cir.1976). The determination of reasonable reliance must "be made on a case-by-case basis based on all of the surrounding circumstances." *AES Corp. v. The Dow Chemical Co.*, 325 F.3d 174, 179 (3d Cir.2003). The Third Circuit has further recognized that the absence of reasonable reliance "is in the nature of an affirmative defense," and therefore, the defendant bears the burden of establishing

that the plaintiff's reliance was unreasonable. *Straub*, 540 F.2d at 598.

B. *Whether The Complex Nature Of The Transaction And Tracinda's Status As A Sophisticated Investor Precludes Tracinda From Establishing Reasonable Reliance*

Defendants contend that Tracinda cannot establish that it reasonably relied on the alleged oral representations of Defendants that the merger was to be a merger of equals, because (1) Tracinda's Kerkorian and Alijian conceded that the "merger of equals" that was promised was embodied in the provisions of the BCA; (2) Tracinda was a sophisticated investor; and (3) complex transactions such as the one completed in this case are not conducted on the basis of oral communications. I have reviewed the deposition testimony of Mr. Kerkorian and Mr. Alijian and find Defendants' characterization of this testimony to be an overstatement. In testifying about the merger of equals concept, Kerkorian and Alijian recognized that the BCA "reflected and effectuated" the merger of equals, but I do not read this testimony to be a concession that the "merger of equals" concept was limited to the terms of the BCA. Indeed, Tracinda has never maintained that the term "merger of equals" was defined solely by reference to the BCA, and I have previously observed in the context of Defendants' motion to dismiss, that the term "merger of equals" has meaning beyond the provisions of the BCA. *Tracinda*, 197 F.Supp.2d at 59–60. Further, Kerkorian testified that if he had known that the transaction would not be a

merger of equals or that the governance of the combined company would not be shared by Chrysler and Daimler–Benz executives, he would not have executed the Stockholder Agreement binding Tracinda to vote its shares in favor of the merger. (Kerkorian Tr. 260:21–23). Thus, Kerkorian testified that he relied on Defendants' representations about the merger when he signed the Stockholder Agreement which assured Tracinda's support for the merger. (Kerkorian Tr. 225:18–22, 226:2–12, 228:2–7, 264:18–24, 265:20–24, Kamps Ex. 23).

■ With respect to the sophistication of Tracinda and the complexity of the transaction, I observe that, while these factors may be considered in determining whether Tracinda's reliance was reasonable, neither factor standing alone is dispositive. As the Third Circuit has repeatedly recognized, " 'a sophisticated investor is not barred [from] reliance upon the honesty of those with whom he deals in the absence of knowledge that the trust is misplaced.' " *AES*, 325 F.3d at 180 (quoting *Straub*, 540 F.2d at 598). Although Tracinda was a sophisticated investor, Tracinda also shared a longstanding relationship with Chrysler and Robert Eaton, the former chairman and chief executive officer of Chrysler. Tracinda owned approximately 13.7% of Chrysler's common stock, and its representative, Alijian, was a member of the Chrysler Board of Directors. As a shareholder, Eaton owed a fiduciary duty to Tracinda, and on a more personal level, Eaton and Tracinda's Kerkorian developed a solid working relationship.[1]

---

1. Defendants contend that the *Straub* factors of fiduciary relationship and long-standing personal or business relationship do not weigh in favor of Tracinda, because these factors must be evaluated vis-á-vis Defendants. Defendants did not have a fiduciary relationship with Tracinda or a long-standing business or personal relationship with Tracinda. However, in this case, Tracinda's evi-

dence demonstrates that Defendants knew Tracinda was a major shareholder and wanted Tracinda's support for the transaction. Tracinda's evidence also suggests that Defendants were aware that Eaton would be attempting to garner Tracinda's support for the transaction, and that Eaton would solicit Tracinda's support based on Defendants' "merg-

Further, Tracinda's importance to Chrysler was also recognized by Defendants who viewed Tracinda's support for the merger as "key" and conditioned the merger on Tracinda's approval. In addition to the existence of a fiduciary relationship with Chrysler and its long-standing business relationship with Chrysler, the record also demonstrates that Tracinda had no access to information which would have made it aware of Defendants' alleged intention to takeover Chrysler and no opportunity to detect such information. Indeed, this information was in the province of Defendant Schrempp and those close to him, and Tracinda could only have known that information which Defendants chose to provide. *See e.g. Medsystems, Inc. v. EchoCath*, 235 F.3d 865, 883 (3d Cir. 2000) (holding that reliance was not unreasonable as a matter of law where plaintiff did not have access to information that would have suggested that defendants' oral representations were false and concluding that question of whether plaintiff should have conducted further inquiries to verify the representations was an issue for the trier of fact). Thus, while Tracinda was clearly a sophisticated investor involved in a complex transaction, many of the other reasonableness factors weigh in favor of a finding that Tracinda's reliance was reasonable. As such, I am not persuaded that Defendants have met their burden of establishing the absence of reasonable reliance as a matter of law. Rather, I find the factors to be sufficiently mixed so as to create a genuine issue of material fact concerning the reasonableness of Tracinda's reliance.

B. *Whether The Presence Of The Integration Clause In The Stockholder Agreement Is Sufficient To Preclude Tracinda From Establishing Reasonable Reliance*

Defendants refer to the Integration Clause in the Stockholder Agreement executed by Tracinda and contend that the Integration Clause precludes Tracinda from establishing reasonable reliance on any representations, oral or written, outside the confines of the written agreements executed by Tracinda. In relevant part, the Integration Clause provides:

This Agreement, the Standstill Agreement, and the other agreements executed and delivered by any of the parties hereto and the Stockholder in connection herewith constitute the entire subject matter hereof and supersede all other prior agreements and understanding, both written and oral, between the Stockholder and such other parties with respect to the subject matter hereof.

(Ex. 29 at 250 (Stockholder Agreement 4.3)).

In support of their contention, Defendants rely on my decision in *AES Corp. v. Dow Chem. Co.*, 157 F.Supp.2d 346, 351–354 (D.Del.2001) and the decisions of other courts in *One–O–One Enters., Inc. v. Caruso*, 848 F.2d 1283 (D.C.Cir.1988), *Jackvony v. RIHT Finan. Corp.*, 873 F.2d 411 (1st Cir.1989), and *Rissman v. Rissman*, 213 F.3d 381 (7th Cir.2000).

In *AES*, I concluded that an enforceable no representation/non-reliance clause contained in asset purchase, confidentiality, and merger agreements barred the buyer from establishing reasonable reliance for purposes of a Section 10(b) and Rule 10b–5 claim. 157 F.Supp.2d at 351–354. Howev-

---

er of equals" representations. Thus, taking the record in the light most favorable to Tracinda, I cannot conclude that Tracinda's reliance on the oral representations made by Defendants through Eaton was unreasonable.

er, the Third Circuit reversed the *AES* decision and concluded that the existence of a non-reliance clause is but one factor to consider in determining the reasonableness of a party's reliance. *AES*, 325 F.3d at 180, 183. In reaching this conclusion, the Third Circuit considered the cases advanced by Defendants, and found that these cases support the conclusion that the existence of a non-reliance clause should be treated as one factor in determining whether the plaintiff's reliance was reasonable. *Id.* at 183. However, with regard to sophisticated investors, the Third Circuit held that a sophisticated party will have to "show more to justify its reliance" in the face of a non-reliance clause. *Id.* at 180. Accordingly, the Third Circuit instructed that "cases involving a non-reliance clause in a negotiated contract between sophisticated parties will often be appropriate candidates for resolution at the summary judgment stage," particularly where the evidence of non-reliance is unrebutted. *Id.* at 180–181.

■ Considering the facts adduced by the parties and the relevant case law, I am not persuaded that this case can be resolved in the context of a summary judgment motion. First, this case involves an Integration Clause, which is not as explicit with respect to the issue of reliance as the non-reliance clause in *AES*. Further, I find that the bulk of the *Straub* factors weigh against a finding that Tracinda's reliance on Defendants' representations was unreasonable as a matter of law. In my view, Tracinda has offered sufficient evidence to rebut Defendants' evidence of non-reliance and support its allegations that Defendants never intended the transaction to be a merger of equals, but instead, planned a secret take-over of Chrysler from the beginning. The evidence advanced by Tracinda demonstrates that Defendants thoroughly investigated an acquisition of Chrysler, but concluded, based on the advice of its advisors, that a friendly approach to Chrysler was the best approach for a successful transaction. (Kamps Ex. 11; Schrempp Tr. 29:4–8). Indeed, Defendant Schrempp has acknowledged that the transaction would never have happened if it was couched in terms suggesting a take-over. (Schrempp Tr. 166:17–23). Although the negotiations focused on a friendly merger of equals, Tracinda has advanced evidence, in the form of notes taken by Rudiger Grube during a meeting with Schrempp, that as late as February 1998, Defendant Schrempp still intended the transaction to be a take-over despite his representations to the contrary. As Grube's notes explain, the idea was "de facto: We take over [Chrysler] (de facto no merger)." (Kamps Exs. 106A & 107 at 1; Grube Tr. 158:16–161:10). Tracinda's evidence demonstrates that Defendants mounted a full-scale communications campaign aimed at concealing their intent to take control of Chrysler and pressing the "merger of equals" concept. Based on the evidence adduced by Tracinda, it also appears that Defendants wanted Tracinda's support for the transaction and knew that Mr. Eaton would be communicating with Tracinda to gain that support. (Kerkorian Tr. 220:2–23, 225:9–14; Eaton Tr. 115:16–22, 116, 119:18–120:1, 118:18–25; Schrempp 243:6–244:4). In light of these unique circumstances, I cannot conclude that Defendants have met their burden of establishing that Tracinda's reliance was unreasonable as a matter of law. To the extent that Defendants have advanced evidence which may undermine Tracinda's credibility on the question of reliance, including Tracinda's past efforts to acquire Chrysler and Tracinda's alleged desire from the onset to effectuate the transaction with Daimler–Benz, I conclude that such evidence raises genuine issues of material fact which are appropriately reserved for trial.

C. *Whether The Substantive Terms Of The Stockholder And Standstill Agreement Preclude Tracinda From Establishing Reasonable Reliance As A Matter Of Law*

Beyond the mere existence of the Integration Clause, Defendants contend that the actual substantive provisions of the Stockholder Agreement and the Standstill Agreement preclude Tracinda from establishing reasonable reliance on the oral representations or the representations in the Proxy/Prospectus. Under the Standstill Agreement, Tracinda was bound to vote its shares on all matters, including proposed mergers, in the same proportion as all other Chrysler shareholders, and Tracinda was precluded from soliciting proxies or otherwise influencing Chrysler shareholders. Under the terms of the Stockholder Agreement, Tracinda was bound to vote its shares in favor of the merger. Because these Agreements bound Tracinda to vote in favor of the merger, Defendants maintain that Tracinda cannot establish that it relied on any oral representations made by Defendants in connection with the merger.

■ Though not presented by Defendants in terms of causation, I believe that Defendants' argument regarding the substance of these Agreements is essentially an argument that Tracinda cannot establish transaction causation. *See e.g. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001) (describing transaction causation as reliance). If Tracinda was bound by the Standstill Agreement and Stockholder Agreement to vote a certain way, Tracinda cannot establish that but for the alleged misrepresentations, it would not have voted for the merger. However, Tracinda has maintained from the onset with respect to the Stockholder Agreement, that it never would have entered into the Stockholder Agreement if it thought the merger was anything but a "merger of equals."

In other words, Tracinda has maintained that it was fraudulently induced into signing the Stockholder Agreement by Defendants' misrepresentations concerning the transaction. Under Delaware law, "[o]ne who has been fraudulently induced to enter a contract is entitled to rescission of that agreement." *Toner v. Allstate Ins. Co.*, 829 F.Supp. 695, 698 (D.Del.1993). I find that Tracinda has advanced sufficient evidence of fraud to support its position that it would have sued to void the Stockholder Agreement if it had known about Defendants' alleged misrepresentations. Thus, I cannot conclude that the Stockholder Agreement renders Tracinda's reliance on Defendants' representations unreasonable as a matter of law.

As for the Standstill Agreement, Tracinda cannot rely on its fraud in the inducement argument, because the Standstill Agreement was executed in 1996, well before any of the negotiations between Chrysler and Daimler–Benz. An investor cannot show reasonable reliance on a defendant's false statements when those statements were made after the transaction was entered into. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (holding that a fraudulent statement made after a contract for the purchase of securities was entered into was not actionable, because "[a] statement cannot be fraudulent if it did not affect an investment decision of the plaintiff"). However, even Defendants have acknowledged, albeit in the context of their statute of limitations argument, that Tracinda could have sought a preliminary injunction to enjoin the merger, despite the existence of the Stockholder and Standstill Agreements, if it had been aware of Defendants' alleged fraudulent representations. Further, the Standstill Agreement did not obligate Tracinda to vote in favor of the merger. Rather, the Standstill Agreement only obligated Tracinda to vote its shares in the same

proportion as other Chrysler shareholders. Defendants' argument appears to be that if they successfully duped other shareholders into voting for the merger, Tracinda still would have been obligated to likewise vote its shares in favor of the merger. I have difficulty accepting such an argument in the context of this case, where Tracinda has advanced evidence to support its allegations of fraud, and the alleged misrepresentations are both far-reaching and possibly intentional. Also, I find this argument difficult to accept in light of the anti-fraud provisions of the Exchange Act. Specifically, Section 29(a) of the Exchange Act provides:

> Any condition, stipulation, or provision binding any person to waive compliance with any provision of this subchapter or any of the rules or regulations thereunder, or any rule of an exchange required thereby, shall be void.

15 U.S.C. § 78cc(a). To hold Tracinda to the term of the Standstill Agreement in light of their substantiated allegations of fraud, would run counter to this section. Further, despite the terms of the Standstill Agreement, Tracinda has advanced evidence that Defendants still found Tracinda's support for the negotiations to be essential. Indeed, if the Standstill Agreement were enough to ensure Tracinda's definitive support for the transaction, Defendants would likely have found no need to have Tracinda execute the Stockholder Agreement which was aimed at locking up Tracinda's entire vote in favor of the merger. That Defendants took the additional steps to ensure Tracinda's full support evidences Tracinda's importance to the transaction and weakens Defendants' argument that Tracinda could not have reasonably relied on Defendants' alleged misrepresentations. Accordingly, in these circumstances, I am unable to conclude that the existence of the Standstill Agreement is sufficient to preclude Tracinda's reasonable reliance as a matter of law.

### D. *Summary*

In sum, I conclude that Defendants have not met their burden of establishing that Tracinda's reliance was unreasonable under the circumstances. Tracinda had no opportunity to detect Defendants' alleged fraud and had no access to information which would have led it to suspect fraud. Although Tracinda did not have a fiduciary relationship or business relationship directly with Defendants and was a sophisticated investor, the record evidence suggests that Defendants made a concerted effort to gain Tracinda's support for the merger. Defendants wanted Tracinda's full and unconditional support and knew that Eaton was communicating Defendants' intentions to Tracinda. Defendants also wanted Tracinda to enter into the Stockholder Agreement to ensure Tracinda's support for the transaction. As the Third Circuit has noted:

> [A] sophisticated investor is not barred [from] reliance upon the honesty of those with whom he deals in the absence of knowledge that the trust is misplaced. Integrity is still the mainstay of commerce and makes it possible for an almost limitless number of transactions to take place without resort to the courts.

*AES*, 325 F.3d at 182 (quoting *Straub*, 540 F.2d at 598). The record evidence at this juncture demonstrates that Tracinda had no reason to doubt the truthfulness of the information Defendants' transmitted through Eaton and establishes that Defendants may have engaged in a fraudulent scheme to acquire Chrysler. Thus, I conclude that the totality of the circumstances does not demonstrate the absence of reasonable reliance as a matter of law. Further, I find that genuine issues of material fact exist concerning the reasonableness of the reliance alleged by Tracinda. Accordingly, I must deny Defendants' Motion For Summary Judgment to the extent that

they contend that Tracinda is precluded as a matter of law from establishing reasonable reliance.

## II. Whether Defendants Are Entitled To Summary Judgment On Tracinda's Claims Of Common Law Fraud And Violations Of The Exchange Act On The Grounds That Tracinda Cannot Establish Loss Causation As A Matter Of Law

By their Motion For Summary Judgment, Defendants contend that Tracinda cannot prove loss causation, because its "lost opportunity" theory of damages is "wholly speculative." Specifically, Defendants contend that Tracinda cannot show that it lost the opportunity to negotiate for a higher premium, because there were no other offers to buy Chrysler. Defendants also maintain that Tracinda cannot show that Defendants would have paid a higher premium for Chrysler shares.

In response, Tracinda contends that its lawsuit is not premised on a "lost opportunity" theory of damages. According to Tracinda, it is not alleging that it lost the opportunity to negotiate a better deal for Chrysler. Rather, Tracinda maintains that the transaction that actually occurred was not a merger of equals, but an acquisition of Chrysler by Daimler–Benz, such that Tracinda was entitled to a "control premium." In the alternative, Tracinda contends that even if its claims are categorized as "lost opportunity" claims, there are factual questions that exist which preclude me from finding that Tracinda's losses are speculative as a matter of law.

### A. *Loss Causation Generally*

■ To establish a claim under Sections 10 and 14 of the Exchange Act, Tracinda must establish loss causation. To establish loss causation, Tracinda must show a "legal link" between Defendants' alleged misrepresentations and Tracinda's alleged injury. *Tse v. Ventana Medical Systems,* *Inc.,* 297 F.3d 210, 217 (3d Cir.2002) (*Tse III*). This "legal link" is established if Tracinda can "demonstrate that the fraudulent conduct proximately caused or substantially contributed to causing [its] economic loss." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 181 n. 24 (3d Cir.2001). The question of "whether the plaintiff has proven causation is usually reserved for the trier of fact." *EP Medsystems, Inc. v. EchoCath, Inc.,* 235 F.3d 865, 884 (3d Cir.2000).

### B. *Whether Plaintiffs' Claims For Damages Are Appropriately Characterized As Lost Opportunity Damages*

■ As a threshold matter, I must determine whether Tracinda seeks solely "lost opportunity damages" as Defendants maintain, or other measures of damages. "Out-of-pocket" losses are the standard measure of damages for Rule 10b–5 and Section 14(a) claims. *Tse v. Ventana Medical Systems, Inc.,* 123 F.Supp.2d 213, 222 (D.Del.2000) (*Tse II*). Out-of-pocket losses are measured by "the difference between the fair value of all that the seller received and the fair value of what he would have received had there been no fraudulent conduct." *Id.* (quoting *Affiliated Ute Citizens of Utah v. U.S.,* 406 U.S. 128, 155, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). Though not the standard measure of damages, "benefit of the bargain" damages may be available in securities fraud actions. "Benefit of the bargain damages" are measured by the difference between what the plaintiff expected he would have received absent the defendant's fraud, and the amount the plaintiff actually received. *See e.g. DCD Programs, Ltd. v. Leighton,* 90 F.3d 1442, 1449 (9th Cir.1996) (holding that "benefit of the bargain damages allow plaintiff to recover difference between (1) the value, as represented by the defendant, of the security the plaintiff bought or

sold, and (2) the actual fair value of that security on the date of the purchase or sale") (citations omitted).

When actual losses cannot be demonstrated, the Third Circuit has recognized an alternate theory of establishing damages. This theory of damages is known as "lost opportunity" damages. Lost opportunity damages are the "loss of a possible profit or benefit, [defined as] an addition to value of one's investment, unless the loss is wholly speculative." *Tse II,* 123 F.Supp.2d at 223. Lost opportunity damages are not "wholly speculative" if they are based on "certain, fixed and demonstrable profits thwarted by a defendant's alleged fraud." *Rudinger v. Insurance Data Processing, Inc.,* 778 F.Supp. 1334, 1341 (E.D.Pa.1991). Further, lost opportunities damages "are not available where the fact of the loss, i.e. whether there was any lost opportunity at all, is wholly speculative." *Tse III,* 297 F.3d at 220. Where the fact of the lost opportunity is established, any " 'risk of uncertainty as to [the] amount of damages is cast on the wrongdoer and it is the duty of the fact finder to determine the amount of the damages as best he can from all the evidence in the case.' " *Id.* (citing *Gould v. American–Hawaiian Steamship Co.,* 535 F.2d 761, 781–782 (3d Cir.1976)).

Defendants contend that the only damages sought by Tracinda are "lost opportunity damages." Defendants maintain that such damages are unavailable to Tracinda as a matter of law, because it has offered no evidence demonstrating that Chrysler would have demanded a higher price in the merger negotiations or that Defendants would have been willing to pay a higher price for Chrysler.

Tracinda disagrees with Defendants' characterization of its claim and maintains that its damages are not based on whether Chrysler could have negotiated a better deal with Daimler–Benz. Rather, Tracinda contends that its damages are based on the transaction that actually occurred, i.e. a takeover of Chrysler by Daimler–Benz through fraudulent means without the payment of a control premium. Thus, Tracinda maintains that it has established loss causation, because the evidence demonstrates that Defendants' misrepresentation that the transaction was a merger of equals rather than an acquisition deprived them of a right with substantial economic value, i.e. a control premium.

■ After reviewing the parties' arguments in light of the applicable legal principles, I agree with Tracinda that this case is not solely a "lost opportunity" case. Tracinda has maintained throughout this litigation that its claim is not based on a hypothetical transaction which would require speculation as to what the parties would have done had the circumstances been different. As I recognized in *Tracinda,* "Plaintiffs are not relying on 'a bargain whose terms must be supplied by hypothesis,' but on the transaction that actually occurred. Plaintiffs' allegation is that the transaction that occurred was billed as something other than it actually was to conceal its true nature. In other words, the transaction was a 'wolf in sheep's clothing.' " *Tracinda,* 197 F.Supp.2d at 68 n. 12. Thus, I understand that Tracinda is seeking damages based upon the bargain that was actually struck, and not solely on the basis of the lost opportunity to have negotiated a more favorable transaction, and therefore, I conclude that Tracinda's claim for damages does not rest solely upon the lost opportunity theory. *See e.g. Sandberg v. Virginia Bankshares, Inc.,* 891 F.2d 1112, 1117 (4th Cir.1989), *rev'd on other grounds,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) (recognizing that damages may be measured by difference between value and price paid); *Wilson v. Great Am. Indus. Inc.,* 979 F.2d 924, 932 (2d Cir.1992) (recognizing that

shareholders were entitled to damages based on the difference between what they actually received and what they would have received if the stock had been properly valued absent the fraud).

### C. Whether Tracinda Is Judicially Estopped From Advancing Alternative Theories Of Damages

Defendants contend that Tracinda is precluded by judicial estoppel from abandoning its lost opportunity theory of damages. Specifically, Defendants contend that during the motion to dismiss phase of this case, Tracinda relied heavily on Chief Judge Robinson's decision in *Tse v. Ventana,* 1998 WL 743668 (D.Del. Sept.23, 1998) ("*Tse I* "), a lost opportunity case in which Chief Judge Robinson denied the defendants' motion to dismiss concluding that the plaintiffs could pursue damages for lost opportunity. The case was transferred to Judge Sleet, and on summary judgment, Judge Sleet concluded that plaintiffs could not establish lost opportunity damages as a matter of law, because the plaintiffs' losses were speculative. On appeal, the Third Circuit affirmed Judge Sleet's decision. Having relied on *Tse I,* Defendants contend that Tracinda should not be permitted to distinguish the case to avoid summary judgment.

■■■ Under the doctrine of judicial estoppel, a party may not maintain a position in a legal proceeding that is inconsistent with the position taken by that party in a previous proceeding. *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Whether judicial estoppel should be applied in a particular case depends on several factors including: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading the court to ac-

cept its earlier position so as to create the perception that the court was misled in either the first or second proceeding; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage. *Id.* at 750–751, 121 S.Ct. 1808. These factors are not exhaustive, and the court may consider additional factors depending on the factual context of the case. *Id.* at 751, 121 S.Ct. 1808.

■■■ Defendants raise this argument in their Reply Brief, and Tracinda has not had the opportunity to respond to it. However, I am not persuaded that the principles of judicial estoppel apply in this case. The precise characterization of Tracinda's damages theories was not directly at issue when I decided Defendants' Motions To Dismiss. Further, Tracinda's arguments were limited to the pleading requirements for loss causation, and by advancing Chief Judge Robinson's decision on a motion to dismiss in *Tse I,* I do not believe Tracinda limited its ability to distinguish the case for purposes of summary judgment. Indeed, the parties were aware of the second decision in *Tse,* in which Judge Sleet, granted summary judgment in favor of the defendants. Thus, I do not perceive Tracinda to have shifted positions in light of the Third Circuit's affirmance of Judge Sleet's decision, particularly where, as here, the precise characterization of Tracinda's damages theories was not at issue. Further, and perhaps most importantly, as I recognized in reaching my conclusion that this case is not solely a lost opportunity case, Tracinda has maintained from the onset that its damages are not solely the result of lost opportunity but are based on the transaction that was actually conducted. Thus, I am not persuaded that judicial estoppel should preclude Tracinda from pursuing its alternative theories of damages.[2]

---

2. However, I will require Tracinda to identify the damages theories it intends to pursue at trial by filing a brief letter setting forth its theories no later than November 28, 2003.

### D. Whether Tracinda Has Offered Sufficient Evidence To Establish Loss Causation And Avoid Summary Judgment On Its Claims

To establish loss causation with respect to its Section 10b and 14(a), Tracinda must demonstrate that, as a proximate result of Defendants' allegedly false characterization of the transaction as a merger of equals, Defendants avoided paying the control premium that would have been due for an acquisition of Chrysler. *See e.g. Semerenko v. Cendant Corp.*, 223 F.3d 165, 183–187 ("loss causation" is established where defendants' misstatement proximately causes plaintiffs to suffer a loss); *Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924, 931 (2d Cir.1992) (loss causation is established where defendants' misrepresentations caused plaintiffs to lose a right). Tracinda has offered evidence demonstrating that Defendants' characterization of the merger was false and that Defendants intended to acquire Chrysler. In addition to Schrempp's public statements in the *Financial Times* and *Barron's*, Tracinda has offered evidence that Defendants launched a study code-named "Project Blitz" to analyze the feasibility of acquiring Chrysler. In connection with this study, Defendants hired and met with several financial analysts and bankers who opined that an acquisition of Chrysler would be "significantly accretive" to Daimler shareholders. (Dibelius Tr. 89–93, Kamps Ex. 9, Kamps Ex. 10, Kamps Ex. 11). Tracinda has also offered evidence suggesting that Defendants knew that an acquisition would not be well-received by Chrysler shareholders, that a merger of equals would fare better, and that it was important for "market psychology" that the participants in the merger publicly emphasize that this was a merger of equals and not a buy-out. (Schrempp Tr. 29–30, Kamps Ex. 1–24). To this effect, Tracinda's evidence demonstrates that Defendants hired communications experts to monitor how the public received the merger and to stress the importance of maintaining the "merger of equals" language. Tracinda has further offered evidence that the 28% paid to Chrysler shareholders was not a control premium and that a control premium would have been due if the transaction was properly characterized as, what Tracinda contends it was, namely an acquisition. (Schrempp 74:16–78:6, 86:3–7; Eaton Tr. 248:20–249:22, 251–252; Dibelius Tr. 215:2–4, 253–255; Koch Tr. 31–32, 165–166; Cordes Tr. 143–146; Gentz Tr. 209–212; Kamps Ex. 18; Kamps Ex. 12 at CSFB–DC 2039). Tracinda's evidence demonstrates that Schrempp and Eaton were negotiating a price adjustment based on a fair valuation of Chrysler and Daimler stock, and not a control premium. Indeed, Tracinda points to evidence suggesting that Schrempp had to continually remind Eaton that the price negotiations were based on a merger of equals. (Schrempp Tr.86:3–7). In addition, Tracinda has advanced expert reports quantifying the premium it contends was due as a result of the transaction that occurred. (Kamps Exs. 103, 104). Taking this evidence together and construing all inferences in favor of Tracinda, I find that Tracinda's evidence is sufficient to create genuine issues of material fact regarding loss causation. Accordingly, I conclude that Defendants are not entitled to summary judgment.

Defendants maintain that there are no factual issues in dispute regarding damages and loss causation, because Tracinda is not entitled to a control premium as a matter of law. According to Defendants, no control premium is due, because this transaction did not involve a sale or change of control. In support of their position, Defendants cite to Delaware cases involving breach of fiduciary duty by the directors of corporations involved in merger transactions. For example, in *Ar-*

*nold v. Society For Savings Bancorp, Inc.,* the Delaware Supreme Court recognized that directors of a corporation have a fiduciary duty to seek the best value reasonably available to shareholders when the transaction involves a sale or change of control. 650 A.2d 1270, 1289–1290 (Del. 1994). The court went on to explain that there is not a sale or change of control when control of both companies remains in a large, fluid, changeable and changing market. *Id.* at 1291. The court further recognized that there is not a change of control where minority stockholders retain their opportunity to receive a control premium in the future.

Defendants raise this issue in their Reply Brief, and Tracinda has not had the opportunity to respond to it. As I recognized in *Tracinda,* "the characterization of the transaction that actually occurred is precisely one of the issues in this case." 197 F.Supp.2d at 68. In fact, it appears to me, that Tracinda's entire damages theory regarding its alleged entitlement to a control premium rests on whether the transaction was ultimately a merger of equals or whether it was actually a secret acquisition whereby control of Chrysler was assumed by Defendants. Tracinda has presented evidence supporting its contention that Defendants assumed control of Chrysler. Tracinda has offered evidence that Defendants declined to appoint any Chrysler representatives to the Management Board (Schrempp Tr. 130:12–15) and diminished the responsibilities of former Chrysler executives so severely that they felt compelled to resign from the company (Harris Tr. 69:9–13, 67:8–18; 97:3–14; Kamps Ex. 53, 55). By way of example, Tracinda has offered testimony and evidence related to Thomas Stallkamp, the former president of Chrysler. Although Stallkamp was publicly touted as the senior executive in charge of supervising and integrating Chrysler and Daimler, Stallkamp has testified that his role as the "head" of the integration team was no greater than any other members of the Management Board. According to Stallkamp, he was relegated to "overseeing a financial tracking system . . . rather than a system that was aimed at initiating ideas." (Stallkamp Tr. 52:19–25). Stallkamp's testimony also suggests that he and other Chrysler executives were precluded from genuinely participating in the Management Board. According to Stallkamp, Chrysler executives were not given relevant books and documents for Board presentations and their suggestions were not taken into consideration. (Stallkamp Tr. 190:6–15, 61:2–65:12, 79:16–82:19). Indeed, Stallkamp was so frustrated with the situation that he wrote a memo entitled "Personal Frustrations" in which he detailed the frustrations he was encountering. In addition, Stallkamp discussed with Eaton and Schrempp his frustration at not being given the authority and responsibility to head the Integration Committee that he was previously promised. (Stallkamp Tr. 50:22–51:17; Kamps Ex. 68). Tracinda has also presented evidence that Defendants, consistent with their plan, relegated Chrysler to a mere division of Daimler–Benz. (Kamps Exs. 4, 62, 59, 61). Although Defendants rebut the testimony and evidence offered by Tracinda and offer other explanations for their management actions, I find that Tracinda has advanced sufficient evidence to overcome summary judgment and create a genuine issue of material fact concerning the alleged assumption of control of Chrysler by Defendants.

E. *Whether Defendants Are Entitled To Summary Judgment If Tracinda's Damages Claims Are Characterized As Lost Opportunity Claims*

In the alternative, even if Tracinda's claims for damages are construed as lost opportunity claims, I would not grant sum-

mary judgment on the record before me. In *Tse III*, the Third Circuit confirmed the viability of lost opportunity damages where the fact of the loss is not wholly speculative. In this case, Tracinda has offered evidence that Defendants were aware that a "merger of equals" is not a takeover, that "control premiums" are paid in takeovers, and that Defendants did not pay a control premium. Thus, if this transaction was a concealed takeover as Tracinda contends, then the fact of the loss is not wholly speculative, because even Defendants admit that Tracinda would have been entitled to a control premium and no such premium was paid.

Defendants contend that the Third Circuit's holding in *Tse III* is dispositive and demonstrates that Defendants are entitled to summary judgment. In *Tse III*, the former shareholders of Biotek advanced claims against Ventana and its directors based on the failure to disclose material information related to the merger. The plaintiffs held promissory notes representing their investment in Biotek, and the merger plan provided that the notes held by the plaintiffs would be exchanged for promissory notes issued by Ventana and that those notes could then be converted into Ventana common stock at $5.00 per share. Unless the noteholders opted not to convert any of their notes into common stock, then 50% of their notes would automatically be converted at the rate of $5.00 per share. All of the plaintiffs nonconverted notes were repaid in full, but the plaintiffs advanced a claim for lost opportunity damages contending that had they known the details of the directors' compensation package and the true facts related to Ventana's financial condition, they would have demanded a better exchange rate for their notes.

Examining lost opportunity damages in detail, the *Tse III* court concluded that the plaintiffs were not entitled to lost opportu-

nity damages, because they could not show that the defendants' alleged conduct caused them to miss an actual and nonspeculative opportunity to convert at a better rate. In reaching this conclusion, the *Tse III* court found it highly unlikely that the Ventana shareholders would have blocked the merger, even though they could have amassed the votes to have done so. Further, the *Tse III* court found that it was "highly speculative" that the plaintiffs would have rejected the Ventana merger on the terms that ultimately took place, because Biotek was in shaky financial condition and the plaintiffs would have risked the loss of their entire investment if the company went into bankruptcy.

Relying on *Tse III*, Defendants contend that this case is similarly speculative, because Tracinda cannot establish that Daimler–Benz was willing to pay a higher premium for Chrysler or that Chrysler would have refused to complete the merger. Defendants also contend that Tracinda would not have been able to vote against the merger or amass votes against the merger, because it was bound by the Stockholder Agreement and the Standstill Agreement. However, Tracinda has offered evidence that its support for the transaction was considered "key" and that Daimler conditioned its agreement on Tracinda's approval. (Eaton Tr. 117:12–14; Kamps Ex. 43 at 52; Kamps Ex. 14 at DCX 52141; Kamps Ex. 23 at 1). Tracinda has also offered evidence that it entered into the Stockholder Agreement based on the Defendants' representations that the merger was a merger of equals and that it would not have supported the deal and would have sought a higher price if the transaction was not based on a merger of equals. (Kerkorian Tr. 225:18–22, 226:2–12, 228:2–7, 260:21–23; York Decl. ¶ 3–6; York Decl. Ex. 1 at 2, Ex. 2 at 3). Tracinda has also offered evidence demonstrating that Defendants were interested in acquir-

ing Chrysler, analyzed the cost of doing so, and had the ability to pay a higher premium for Chrysler. (See e.g. Kamps Exs. 8, 11, 14, 84, Keener Ex. 46).

Defendants challenge Tracinda's evidence on both points. Defendants point to affidavits from several Chrysler directors who maintain that they would have approved the transaction with DaimlerBenz as it occurred, no matter how the transaction was labeled. Tracinda attacks the credibility of Defendants' evidence and counters with its own evidence suggesting that if the transaction had been properly disclosed as an acquisition, the transaction would not even have been brought before the Chrysler Board or the shareholders and that no one would have approved such a transaction. (See e.g. Eaton Tr. 17:23–18:5, Schrempp 166:17–2; Alijan Tr. 25:3–25). On a motion for summary judgment, however, I may not make credibility determinations. In the face of the competing evidence advanced by the parties, I find that genuine issues of material fact exist rendering summary judgment inappropriate on this issue.

As for Tracinda's evidence that Defendants would have paid more for Chrysler if the transaction was revealed as an acquisition, Defendants contend that at most, Tracinda has established that Defendants *could* have paid a higher price for the stock, but not that they *would* have paid a higher price. At this stage of the proceedings, however, I must construe all inferences in the light most favorable to the non-movant. In my view, it is logical to infer from Tracinda's evidence that Defendants would have paid more for Chrysler if the transaction was an acquisition. In any event, I cannot resolve fact sensitive issues at this juncture, and I find that Tracinda has presented sufficient evidence to avoid summary judgment. There is at least a genuine issue of material fact as to whether the transaction would have been ap-

proved by Chrysler and whether Daimler–Benz would have offered more if the transaction had been revealed as an acquisition. Accordingly, I conclude that summary judgment is inappropriate.

As for Defendants' reliance on *Tse III*, I find, that while there are some similarities between the circumstances in *Tse III* and the circumstances here, *Tse III* is ultimately distinguishable. In *Tse III*, the omissions about the directors' compensation package were entirely unrelated to the value of the plaintiffs' investment. Because there was no link between the alleged omission and the value of the investment, I agree that it would be highly speculative to assume that the stockholders would have voted against the merger based on the disclosure of the directors' compensation package. However, unlike *Tse III*, in this case, the alleged misrepresentation that this was a merger of equals is a misrepresentation which is directly related to the value of Tracinda's investment. I find this to be particularly important given the nature of Tracinda's claims that Defendants intended a takeover from the beginning but concealed their intentions in order to purposefully deprive Tracinda of the value of its investment in the form of a control premium. Thus, I do not find *Tse III* to be dispositive. Further, Tracinda has advanced evidence which I find sufficient to create genuine issues of material fact. Because Tracinda has advanced sufficient evidence to overcome summary judgment and establish loss causation, I will deny Defendants' Motion For Summary Judgment on the grounds that Tracinda cannot establish loss causation.

## III. Whether The BCA Precludes Tracinda From Establishing Fraud

Defendants next contend that the BCA precludes Tracinda from establishing fraud for all of its common law and federal secu-

rities laws claims, including those claims alleged under the Securities Act. Specifically, Defendants contend that the BCA was not breached, that it fully described the manner in which the merger was to be negotiated and fully disclosed that management changes could and would occur at DaimlerChrysler. Because Tracinda received exactly what was promised in the BCA, Defendants maintain that Tracinda cannot show that Defendants committed fraud. In support of their position, Defendants advance the declaration of the former directors of Chrysler who maintain that the merger that occurred was a "merger of equals."

 In my view, Defendants' argument goes to the question of whether Plaintiff has identified actionable misstatements or omissions. Each of Tracinda's securities claims, as well as its claim of common law fraud, requires an actionable misstatement or omission. As I recognized in the context of Defendants' *Motion To Dismiss*, Tracinda can maintain a claim based on Defendants' secret, undisclosed intent not to honor the promised "merger of equals," coupled with their later refusal to actually honor the promised "merger of equals." Further, I previously concluded that the term "merger of equals" was not defined solely with reference to the BCA. Construing the evidence in the light most favorable to Tracinda, I find that Tracinda has advanced evidence supporting its allegation that a merger of equals never oc-

curred, that Defendants never intended for a merger of equals to occur, and that the Proxy/Prospectus contained false and misleading information in this regard. That the former directors of Chrysler believed that the transaction that was conducted was a merger of equals is also not dispositive and raises factual questions which are inappropriate for summary judgment resolution.[3] As such, I conclude that Defendants are not entitled to summary judgment based on their alleged compliance with the BCA.

## CONCLUSION

In sum, I conclude that genuine issues of material fact preclude a grant of summary judgment. Accordingly, I will deny Defendants' Motion For Summary Judgment based on the absence of reasonable reliance, loss causation and compliance with the BCA.

---

**3.** It appears to me, based on the decisions of the Special Master, that Tracinda has made a Rule 56(f) request to depose the directors whose affidavits were produced by Defendants in the event that I chose to rely on these affidavits to grant summary judgment in favor of Defendants. However, I have been unable to locate a formal Rule 56(f) motion by Tracinda. It appears that the Class Plaintiffs made a Rule 56(f) request in the body of a declaration filed by Dimitry Philipis, but the Class Plaintiffs have announced a settlement in this action, and I have been unable to locate anything indicating that Tracinda joined in this request. The Special Master has permitted additional depositions in this action, and I do not believe that further Rule 56(f) relief is warranted for purposes of my decision on summary judgment, because the affidavits, coupled with the other evidence, raise factual issues, that preclude me from granting Defendants' motion for summary judgment.